Scott E. Kossove, Esq.
L'ABBATE, BALKAN, COLAVITA & CONTINI, L.L.P.
1001 Franklin Avenue – 3rd Floor
Garden City, New York  11530
Office – (516) 294-8844
Fax – (516) 294-8202
Attorneys for Defendants
Coldwell Banker Beach Realty and Thomas Tripodi

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   FEB 0 8 2012   ☆

LONG ISLAND OFFICE

CV   12   0614

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

HUNTER NEWBY and CANDACE NEWBY,

                                            Plaintiffs,

                    -against-

BANK OF AMERICA CORPORATION, a Delaware
corporation, as successor in interest to COUNTRYWIDE
FINANCIAL CORPORATION; COUNTRYWIDE
FINANCIAL CORPORATION, a Delaware corporation,
BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER
TO BAC HOME LOANS SERVICING, LP F/K/A
COUNTRYWIDE HOME LOANS SERVICING, LP., AND
AS SUCCESSOR BY MERGER TO COUNTRYWIDE
BANK, F.S.B. F/K/A COUNTRYWIDE BANK, N.A.;
COUNTRYWIDE HOME LOANS, INC., A New York
corporation, d/b/a AMERICA'S WHOLESALE LENDER;
DAVID CONARY, in his official capacity AS AN AGENT
OF COUNTRYWIDE HOME LOANS, INC.;
COUNTRYWIDE TAX SERVICES CORP.; LANDSAFE,
INC., a Delaware corporation; LANDSAFE APPRAISAL
SERVICES, INC., a California corporation; LANDSAFE
CREDIT, INC., a California corporation; LANDSAFE FLOOD
DETERMINATION, INC., a California corporation,
COLDWELL BANKERS BEACH WEST REALTY;
THOMAS TRIPODI, Individually; SAGE CREDIT
COMPANY, INC a/k/a SAGE CREDIT COMPANY, LLC,
d/b/a DCG HOME LOANS, INC; SARA COUGHLIN,
Individually and in her official capacity AS AN AGENT OF
SAGE CREDIT COMPANY; RMV APPRAISALS;
ANTHONY BENANTI, Individually and in his official capacity
AS AN APPRAISER WITH RMV APPRAISALS; V.K.
APPRAISAL SERVICES, INC.; V.K. APPRAISAL
SERVICES, Inc., VIVIAN D. KAMATH, individually and in
his/her official capacity AS AN APPRAISER WITH V.K.
APPRAISAL SERVICES, INC., AURORA BANK, F.S.B.
a/k/a AURORA MSF LEHMAN; MKM ABSTRACT
SERVICES, INC., LANDSTAR TITLE AGENCY, INC.,

                                            Defendants.
------------------------------------------------------------X

Index No. 11-018112

NO SUMMONS ISSUED
NOTICE OF
REMOVAL

FEUERSTEIN, J

TOMLINSON, M

TO:   UNITED STATES DISTRICT COURT
      FOR THE EASTERN DISTRICT OF NEW YORK:

1.      Coldwell Banker Beach Realty and Thomas Tripodi (collectively "Coldwell") are defendants in the action brought on December 30, 2011 in the Supreme Court of the State of New York, County of Nassau.  Pursuant to provisions of Sections 1441 and 1446 of Title 28 of the United States Code, these defendants remove this action to the United States District Court for the Eastern District of New York, which is the judicial district in which the action is pending.

2.      The grounds for removal of this action are:

(a)      On December 30, 2011, plaintiffs filed a summons and verified complaint in the Supreme Court of the State of New York, County of Nassau, Index No. 11-018112.

(b)      The complaint assets multiple claims based upon the purported violations of the Racketeer Influenced & Corrupt Organization Act ("RICO Act"), which is codified in 18 U.S.C. §§ 1961, *et seq.*

As such, this Court would have original subject matter jurisdiction of this action under the provisions of 28 U.S.C. § 1331 if the action had originally been brought in Federal court.  Removal is, therefore, proper under 28 U.S.C.  § 1441(a, b).

2

3.       Removal of this case is not precluded by the provisions of §1441(b) of Title 28 of the United States Code because removal in this instance is based upon the fact that the complaint asserts claims arising under the laws of the United States—specifically, the RICO Act.

4.       This Notice of Removal is timely under § 1446(b) of Title 28 of the United States Code because these defendants were served with plaintiff's summons and complaint on January 9, 2012, so that this Notice of Removal is being filed within thirty days of receipt of the summons and complaint.  This Notice of Removal is also being filed within one year after the commencement of the action, which was on December 30, 2011.

5.       All pleadings and process served on these defendants at the time of removal, consisting of the summons and verified complaint, are attached.

DATED:    Garden City, New York
          February 8, 2012

                                        Respectfully submitted,

                                        L'ABBATE, BALKAN, COLAVITA
                                        & CONTINI, L.L.P.

                          By:    _____
                                        SCOTT E. KOSSOVE
                                        Attorneys for Defendants
                                        COLDWELL BANKER BEACH WEST REALTY
                                        AND THOMAS TRIPODI
                                        1001 Franklin Avenue, 3rd Floor
                                        Garden City, New York  11530
                                        (516) 294-8844
                                        File No.:  169R-96334

3

To:    Ivan E. Young, Esq.
       Young Law Group, PLLC
       Attorneys for Plaintiffs
       80 Orville Drive, Suite 100
       Bohemia, New York 11716
       (631) 244-1434

       Toniann Mascia, Esq.
       Gallagher, Walker, Bianco & Plastaras, LLP
       Attorneys for Defendants
       MKM Abstract Services, Inc.
       98 Willis Avenue
       Mineola, New York  11501
       (516) 248-2002

       Bank of America Corporation, a Delaware
       Corporation as Successor in Interest
       to Countrywide Financial Corporation
       100 N. Tryon Street
       Charlotte, North Carolina  28255

       Sage Credit Company, Inc.
       a/k/a Sage Credit Company, LLC
       d/b/a DCG Home Loans, Inc.
       8001 Irvine Center Drive, #200
       Irvine, California  92618

       RMV Appraisals
       5507 Avenue N, Suite 3
       Brooklyn, New York  11234

       Anthony Benanti, Appraiser for
       RMV Appraisals
       5507 Avenue N, Suite 3
       Brooklyn, New York  11234

       Countrywide Home Loans, Inc.,
       a New York company d/b/a America's Wholesale Lender
       4500 Park Granada Blvd.
       Calabasas, California  91302

4

Countrywide Tax Services Corp.
4500 Park Granada Blvd.
Calabasas, California  91302

Landsafe Appraisal Services, Inc.
a California corporation
4500 Park Granada Blvd.
Calabasas, California  91302

Countrywide Financial Corporation
a Delaware corporation
4500 Park Granada Blvd.
Calabasas, California  91302

Anthony Benanti, Individually
1733 East 4th Street, Apt. 3F
Brooklyn, New York  11223

Countrywide Financial Corporation
1 Bryant Park
New York, New York  10036

David Conary, Agent of
Countrywide Home Loans, Inc.,
a New York company d/b/a America's Wholesale Lender
4500 Park Granada Blvd.
Calabasas, California  91302

Landsafe, Inc.
a Delaware corporation
6400 Legacy Drive
Plano, Texas  75024

Landsafe Credit, Inc.
a California corporation
4500 Park Granada Blvd.
Calabasas, California  91302

Landsafe Flood Determination, Inc.
a California corporation
4500 Park Granada Blvd.
Calabasas, California  91302

5

Sarah Coughlin, Agent of
Sage Credit Company, Inc.
a/k/a Sage Credit Company, LLC
d/b/a DCG Home Loans, Inc.
8001 Irvine Center Drive, #200
Irvine, California  92618

Vivian D. Kamath, Appraiser for
VK Appraisal Services
677 Little East Neck Road
West Babylon, New York  11704

Bank of America, N.A., as Successor by
merger to BAC Home Loans Servicing, LP
f/k/a Countrywide Home Loans Servicing, LP,
and as successor by merger to Countrywide Bank,
F.S.B. f/k/a Countrywide Bank, N.A.
400 National Way
Simi Valley, California  93065

Sarah Coughlin, Individually
15-1472 15th Avenue
Keaau, Hawaii  96749

Vivian D. Kamath, Appraiser for
VK Appraisal Services
P.O. Box 1478
West Babylon, New York  11704

Vivian D. Kamath, Individually
677 Little East Neck Road
West Babylon, New York  11704

Landstar Title Agency, Inc.
4500 Park Granada Blvd.
Calabasas, California  91302

Aurora Bank, F.S.B.
a/k/a Aurora MSF Lehman
*No Address Provided*

\\Lbccsql03\i\HISTORY\120201_0001\16540.07

6

*Recei~a 1-9-12*
*by*
*secretary Lewis*

COPY
of
**ORIGINAL**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

HUNTER NEWBY and CANDACE NEWBY,
　　　　　　　　　Plaintiffs,

-against-

BANK OF AMERICA CORPORATION, a Delaware
corporation, as successor in interest to COUNTRYWIDE
FINANCIAL CORPORATION; COUNTRYWIDE
FINANCIAL CORPORATION, a Delaware corporation,
BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER
TO BAC HOME LOANS SERVICING, LP F/K/A
COUNTRYWIDE HOME LOANS SERVICING, LP, AND
AS SUCCESSOR BY MERGER TO COUNTRYWIDE
BANK, F.S.B. F/K/A COUNTRYWIDE BANK, N.A.;
COUNTRYWIDE HOME LOANS, INC., a New York
corporation, d/b/a AMERICA'S WHOLESALE LENDER;
DAVID CONARY, in his official capacity AS AN AGENT
OF COUNTRYWIDE HOME LOANS, INC.;
COUNTRYWIDE TAX SERVICES CORP.; LANDSAFE,
INC., a Delaware corporation; LANDSAFE APPRAISAL
SERVICES, INC., a California corporation; LANDSAFE
CREDIT, INC., a California corporation; LANDSAFE FLOOD
DETERMINATION, INC., a California corporation,
COLDWELL BANKERS BEACH WEST REALTY;
THOMAS TRIPODI, Individually; SAGE CREDIT
COMPANY, INC a/k/a SAGE CREDIT COMPANY, LLC,
d/b/a DCG HOME LOANS, INC; SARA COUGHLIN,
Individually and in her official capacity AS AN AGENT OF
SAGE CREDIT COMPANY; RMV APPRAISALS;
ANTHONY BENANTI, Individually and in his official capacity
AS AN APPRAISER WITH RMV APPRAISALS; V.K.
APPRAISAL SERVICES, INC.; V.K. APPRAISAL
SERVICES, Inc.; VIVIAN D. KAMATH, individually and in
his/her official capacity AS AN APPRAISER WITH V.K.
APPRAISAL SERVICES, INC.; AURORA BANK, F.S.B
a/k/a AURORA MSF LEHMAN; MKM ABSTRACT
SERVICES, INC., LANDSTAR TITLE AGENCY, INC.,
　　　　　　　　　Defendants.

Index No. 11-018112

Plaintiff designates
Nassau County as the
place for trial.

**SUMMONS**

The basis of the venue is the
Plaintiff's Residence
Plaintiff's address
14 Prescott Street
Lido Beach, NY 11561

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with the summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgments will be taken against you by default for the relief demanded in the complaint.

Dated: December 29, 2011

YOUNG LAW GROUP, PLLC

By: _____

IVAN E. YOUNG, ESQ.
Young Law Group, PLLC
80 Orville Drive, Suite 100
Bohemia, NY 11716
(631) 244-1434 - Office
(631) 589-0949 – Facsimile

*Attorney for Plaintiffs Hunter Newby;*
*Candace Newby*

Defendants' Addresses:

Bank of America Corporation, a Delaware
Corporation as Successor in Interest
to Countrywide Financial Corporation
100 N. Tryon Street
Charlotte, NC 28255

Coldwell Bankers Beach West Realty
880 West Beech Street
Long Beach, NY 11561

Sage Credit Company, Inc.
a/k/a Sage Credit Company, LLC
d/b/a DCG Home Loans, Inc.
8001 Irvine Center Drive, #200
Irvine, CA 92618

RMV Appraisals
5507 Avenue N, Suite # 3
Brooklyn, NY 11234

Anthony Benanti, Appraiser for
RMV Appraisals
5507 Avenue N, Suite # 3
Brooklyn, NY 11234

Countrywide Home Loans, Inc.,
a New York company d/b/a America's
Wholesale Lender
4500 Park Granada Blvd.
Calabasas, CA 91302

Countrywide Tax Services Corp.
4500 Park Granada Blvd.
Calabasas, CA 91302

Landsafe Appraisal Services, Inc.,
a California corporation
4500 Park Granada Blvd.
Calabasas, CA 91302

MKM Abstract Services
238 Mineola Boulevard
Mineola, NY 11501

Thomas Tripodi, Individually
34 Saratoga Street
Lido Beach, NY 11561

Countrywide Financial Corporation,
a Delaware corporation
4500 Park Granada Blvd.
Calabasas, CA 91302

Anthony Benanti, Individually
1733 East 4th Street, Apt. 3F
Brooklyn, NY 11223

Countrywide Financial Corporation
1 Bryant Park
New York, NY 10036
1 Bryant Park

David Conary, Agent of
Countrywide Home Loans, Inc.,
a New York company d/b/a
America's Wholesale Lender
4500 Park Granada Blvd.
Calabasas, CA 91302

Landsafe, Inc.,
a Delaware corporation
6400 Legacy Drive
Plano, TX 75024

Landsafe Credit, Inc.,
a California corporation
4500 Park Granada Blvd.
Calabasas, CA 91302

01/10/2012   1:40PM

Landsafe Flood Determination, Inc.,
a California corporation
4500 Park Granada Blvd.
Calabasas, CA 91302

Sarah Coughlin, Agent of
Sage Credit Company, Inc.
a/k/a Sage Credit Company, LLC
d/b/a DCG Home Loans, Inc.
8001 Irvine Center Drive, #200
Irvine, CA 92618

Vivian D. Kamath, Appraiser for
VK Appraisal Services
677 Little East Neck Road
West Babylon, NY 11704

Bank of America, N.A., as
Successor by merger to BAC
Home Loans Servicing, LP f/k/a
Countrywide Home Loans
Servicing, LP, and as successor
by merger to Countrywide Bank,
F.S.B f/k/a Countrywide Bank, N.A.
400 National Way
Simi Valley, CA 93065

Sarah Coughlin, Individually
15-1472 15th Ave.
Keaau, HI 96749

Vivian D. Kamath, Appraiser for
VK Appraisal Services
PO Box 1478
West Babylon, NY 11704

Vivian D. Kamath, Individually
677 Little East Neck Road
West Babylon, NY 11704

Landstar Title Agency, Inc.
4500 Park Granada Blvd.
Calabasas, CA 91302

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

| HUNTER NEWBY and CANDACE NEWBY,<br>Plaintiffs, | Index No. 11-018112 |
|---|---|
| -against- | VERIFIED COMPLAINT |
| BANK OF AMERICA CORPORATION, a Delaware corporation, as successor in interest to COUNTRYWIDE FINANCIAL CORPORATION; COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation, BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP, AND AS SUCCESSOR BY MERGER TO COUNTRYWIDE BANK, F.S.B. F/K/A COUNTRYWIDE BANK, N.A.; COUNTRYWIDE HOME LOANS, INC., a New York corporation, d/b/a AMERICA'S WHOLESALE LENDER; DAVID CONARY, in his official capacity AS AN AGENT OF COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE TAX SERVICES CORP.; LANDSAFE, INC., a Delaware corporation; LANDSAFE APPRAISAL SERVICES, INC., a California corporation; LANDSAFE CREDIT, INC., a California corporation; LANDSAFE FLOOD DETERMINATION, INC., a California corporation, COLDWELL BANKERS BEACH WEST REALTY; THOMAS TRIPODI, Individually; SAGE CREDIT COMPANY, INC a/k/a SAGE CREDIT COMPANY, LLC, d/b/a DCG HOME LOANS, INC; SARA COUGHLIN, Individually and in her official capacity AS AN AGENT OF SAGE CREDIT COMPANY; RMV APPRAISALS; ANTHONY BENANTI, Individually and in his official capacity AS AN APPRAISER WITH RMV APPRAISALS; V.K. APPRAISAL SERVICES, INC.; V.K. APPRAISAL SERVICES, Inc.; VIVIAN D. KAMATH, individually and in his/her official capacity AS AN APPRAISER WITH V.K. APPRAISAL SERVICES, INC.; AURORA BANK, F.S.B a/k/a AURORA MSF LEHMAN; MKM ABSTRACT SERVICES, INC., LANDSTAR TITLE AGENCY, INC.,<br>Defendants. | Hon._____ |

VERIFIED COMPLAINT

IVAN E. YOUNG, ESQ.
*Attorney for Plaintiffs Hunter Newby & Candace Newby*
80 Orville Drive, Suite 100
Bohemia, NY 11716
(631) 244-1433
(631) 589-0949 (fax)

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the Courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed documents are not frivolous.

To:
Attorneys for

_____
IVAN E. YOUNG, ESQ.

01/10/2012   1:40PM

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

| | |
|---|---|
| HUNTER NEWBY and CANDACE NEWBY,<br>Plaintiffs, | Index No. 11-018112 |
| -against- | VERIFIED COMPLAINT |
| BANK OF AMERICA CORPORATION, a Delaware corporation, as successor in interest to COUNTRYWIDE FINANCIAL CORPORATION; COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation, BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP, AND AS SUCCESSOR BY MERGER TO COUNTRYWIDE BANK, F.S.B. F/K/A COUNTRYWIDE BANK, N.A.; COUNTRYWIDE HOME LOANS, INC., a New York corporation, d/b/a AMERICA'S WHOLESALE LENDER; DAVID CONARY, in his official capacity AS AN AGENT OF COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE TAX SERVICES CORP.; LANDSAFE, INC., a Delaware corporation; LANDSAFE APPRAISAL SERVICES, INC., a California corporation; LANDSAFE CREDIT, INC., a California corporation; LANDSAFE FLOOD DETERMINATION, INC., a California corporation, COLDWELL BANKERS BEACH WEST REALTY; THOMAS TRIPODI, Individually; SAGE CREDIT COMPANY, INC a/k/a SAGE CREDIT COMPANY, LLC, d/b/a DCG HOME LOANS, INC; SARA COUGHLIN, Individually and in her official capacity AS AN AGENT OF SAGE CREDIT COMPANY; RMV APPRAISALS; ANTHONY BENANTI, Individually and in his official capacity AS AN APPRAISER WITH RMV APPRAISALS; V.K. APPRAISAL SERVICES, INC.; V.K. APPRAISAL SERVICES, Inc.; VIVIAN D. KAMATH, individually and in his/her official capacity AS AN APPRAISER WITH V.K. APPRAISAL SERVICES, INC.; AURORA BANK, F.S.B a/k/a AURORA MSF LEHMAN; MKM ABSTRACT SERVICES, INC., LANDSTAR TITLE AGENCY, INC.,<br>Defendants. | Hon._____ |

The Plaintiffs, HUNTER NEWBY and CANDACE NEWBY by their attorney, IVAN E.

YOUNG, ESQ., as and for their Complaint to obtain judgment herein declaring the rights,

obligations and legal relationship of the parties to this action in the respect hereinafter set forth, respectfully alleges upon information and belief as follows:

1.     That at all times hereinafter mentioned the Plaintiff, HUNTER NEWBY and CANDACE NEWBY ("NEWBYS"), were and are residents of the State of New York, County of Nassau.

2.     That at all times hereinafter mentioned, Defendant business, BANK OF AMERICA CORPORATION, as successor in interest to COUNTRYWIDE FINANCIAL CORPORATION was a duly organized corporation incorporated under the laws of the State of Delaware.

3.     That at all times hereinafter mentioned, BANK OF AMERICA CORPORATION, as successor in interest to COUNTRYWIDE FINANCIAL CORPORATION was a duly organized corporation doing and transacting business in the State of New York, County of Nassau.

4.     That at all times hereinafter mentioned, BANK OF AMERICA CORPORATION, as successor in interest to COUNTRYWIDE FINANCIAL CORPORATION regularly does and/or solicits business within the State of New York, County of Nassau.

5.     That at all times hereinafter mentioned, BANK OF AMERICA CORPORATION, as successor in interest to COUNTRYWIDE FINANCIAL CORPORATION expected or should reasonably have expected its acts and business activities to have consequences within the State of New York, County of Nassau.

6.     That at all times hereinafter mentioned, BANK OF AMERICA CORPORATION, as successor in interest to COUNTRYWIDE FINANCIAL CORPORATION, derived substantial revenues from local and/or interstate commerce.

7.    That at all times hereinafter mentioned, Defendant business, BANK OF AMERICA CORPORATION was/is the successor in interest and/or responsible parent company of Defendant businesses; COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation; BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP f/k/a COUNTRYWIDE HOME LOANS SERVICING, LP, AND AS SUCCESSOR BY MERGER TO COUNTRYWIDE BANK, F.S.B. f/k/a COUNTRYWIDE BANK, N.A.; COUNTRYWIDE HOME LOANS, INC., a New York corporation d/b/a AMERICA'S WHOLESALE LENDER; and COUNTRYWIDE TAX SERVICES CORPORATION as of August 23, 2007.

8.    That at all times hereinafter mentioned, Defendant business, COLDWELL BANKERS BEACH WEST REALTY, was a duly organized corporation incorporated under the laws of the State of New York.

9.    That at all times hereinafter mentioned, Defendant business, COLDWELL BANKERS BEACH WEST REALTY was a duly organized corporation doing and transacting business in the State of New York, County of Nassau.

10.    That at all times hereinafter mentioned, Defendant business, COLDWELL BANKERS BEACH WEST REALTY, regularly does and/or solicits business within the State of New York, County of Nassau.

11.    That at all times hereinafter mentioned, Defendant business, COLDWELL BANKERS BEACH WEST REALTY expected or should reasonably have expected its acts and business activities to have consequences within the State of New York, County of Nassau.

12.     That at all times hereinafter mentioned, Defendant business, COLDWELL BANKERS BEACH WEST REALTY, derived substantial revenues from local and/or interstate commerce.

13.     That at all times hereinafter mentioned, Defendant THOMAS TRIPODI was/is a resident of the State of New York, County of Nassau.

14.     That at all times hereinafter mentioned, Defendant THOMAS TRIPODI was/is a real estate broker, licensed by the State of New York.

15.     That at all times hereinafter mentioned, Defendant THOMAS TRIPODI was/is an employee and/or officer of Defendant business COLDWELL BANKERS BEACH WEST REALTY.

16.     That at all times hereinafter mentioned, Defendant business, SAGE CREDIT COMPANY, INC a/k/a SAGE CREDIT COMPANY, LLC, d/b/a DCG HOME LOANS, INC, was a duly organized corporation incorporated under the laws of the State of California.

17.     That at all times hereinafter mentioned, Defendant business, SAGE CREDIT COMPANY, INC a/k/a SAGE CREDIT COMPANY, LLC, d/b/a DCG HOME LOANS, INC, was a duly organized corporation doing and transacting business in the State of New York, County of Nassau.

18.     That at all times hereinafter mentioned, Defendant business, SAGE CREDIT COMPANY, INC a/k/a SAGE CREDIT COMPANY, LLC, d/b/a DCG HOME LOANS, INC, regularly does and/or solicits business within the State of New York, County of Nassau.

19.     That at all times hereinafter mentioned, Defendant business, SAGE CREDIT COMPANY, INC a/k/a SAGE CREDIT COMPANY, LLC, d/b/a DCG HOME LOANS, INC

expected or should reasonably have expected its acts and business activities to have consequences within the State of New York, County of Nassau.

20.    That at all times hereinafter mentioned, Defendant business, SAGE CREDIT COMPANY, INC. a/k/a SAGE CREDIT COMPANY, LLC, d/b/a DCG HOME LOANS, INC, derived substantial revenues from local and/or interstate commerce.

21.    That at all times hereinafter mentioned, Defendant SARA COUGHLIN was/is a mortgage loan officer with Defendant business SAGE CREDIT COMPANY, INC a/k/a SAGE CREDIT COMPANY, LLC, d/b/a DCG HOME LOANS, INC.

22.    That at all times hereinafter mentioned, Defendant SARA COUGHLIN was/is an employee and/or officer of Defendant business SAGE CREDIT COMPANY, INC a/k/a SAGE CREDIT COMPANY, LLC, d/b/a DCG HOME LOANS, INC.

23.    Plaintiffs are ignorant as to the organization of Defendant RMV APPRAISALS. RMV APPRAISALS has held itself out to be a corporation organized under the laws of New York, however after diligently researching New York's public records, Plaintiffs were unable to locate any such entity properly registered, organized, or qualified to do business within the State of New York.

24.    That at all times hereinafter mentioned, Defendant business, RMV APPRAISALS was a non-duly organized corporation doing and transacting business in the State of New York, County of Nassau.

25.    That at all times hereinafter mentioned, Defendant business, RMV APPRAISALS, regularly does and/or solicits business within the State of New York, County of Nassau.

26.     That at all times hereinafter mentioned, Defendant business, RMV APPRAISALS expected or should reasonably have expected its acts and business activities to have consequences within the State of New York, County of Nassau.

27.     That at all times hereinafter mentioned, Defendant business, RMV APPRAISALS, derived substantial revenues from local and/or interstate commerce.

28.     That at all times hereinafter mentioned, Defendant ANTHONY BENANTI was/is a resident of the State of New York.

29.     That at all times hereinafter mentioned, Defendant ANTHONY BENANTI was/is a real estate appraiser, licensed by the State of New York.

30.     That at all times hereinafter mentioned, Defendant ANTHONY BENANTI was/is an employee and/or officer of Defendant business RMV APPRAISALS.

31.     That at all times hereinafter mentioned, Defendant businesses, LANDSAFE, INC., a Delaware corporation and its subsidiaries; LANDSAFE APPRAISAL SERVICES, INC., a California corporation; LANDSAFE CREDIT, INC., a California corporation, LANDSAFE FLOOD DETERMINATION, INC., a California corporation and; LANDSTAR TITLE AGENCY, INC., were collectively duly organized corporations incorporated under the laws of the State of California.

32.     That at all times hereinafter mentioned, Defendant businesses, LANDSAFE, INC., a Delaware corporation and its subsidiaries; LANDSAFE APPRAISAL SERVICES, INC., a California corporation; LANDSAFE CREDIT, INC., a California corporation, LANDSAFE FLOOD DETERMINATION, INC., a California corporation and; LANDSTAR TITLE AGENCY, INC., were collectively duly organized corporations doing and transacting business in the State of New York, County of Nassau.

33.   That at all times hereinafter mentioned, Defendant businesses, LANDSAFE, INC., a Delaware corporation and its subsidiaries; LANDSAFE APPRAISAL SERVICES, INC., a California corporation; LANDSAFE CREDIT, INC., a California corporation, LANDSAFE FLOOD DETERMINATION, INC., a California corporation and; LANDSTAR TITLE AGENCY, INC., regularly do and/or solicit business within the State of New York, County of Nassau.

34.   That at all times hereinafter mentioned, Defendant businesses, LANDSAFE, INC., a Delaware corporation and its subsidiaries; LANDSAFE APPRAISAL SERVICES, INC., a California corporation; LANDSAFE CREDIT, INC., a California corporation, LANDSAFE FLOOD DETERMINATION, INC., a California corporation and; LANDSTAR TITLE AGENCY, INC., expected or should reasonably have expected their acts and business activities to have consequences within the State of New York, County of Nassau.

35.   That at all times hereinafter mentioned, Defendant businesses, LANDSAFE, INC., a Delaware corporation and its subsidiaries; LANDSAFE APPRAISAL SERVICES, INC., a California corporation; LANDSAFE CREDIT, INC., a California corporation, LANDSAFE FLOOD DETERMINATION, INC., a California corporation and; LANDSTAR TITLE AGENCY, INC., derived substantial revenues from local and/or interstate commerce.

36.   Plaintiffs are ignorant as to the organization of Defendant VK APPRAISAL SERVICES.  VK APPRAISAL SERVICES has held itself out to be a corporation organized under the laws of New York, however after diligently researching New York's public records, Plaintiffs were unable to locate any such entity properly registered, organized, or qualified to do business within the State of New York.

37.     That at all times hereinafter mentioned, Defendant business, VK APPRAISAL SERVICES was a non-duly organized corporation doing and transacting business in the State of New York, County of Nassau.

38.     That at all times hereinafter mentioned, Defendant business. VK APPRAISAL SERVICES, regularly does and/or solicits business within the State of New York, County of Nassau.

39.     That at all times hereinafter mentioned, Defendant business, VK APPRAISAL SERVICES expected or should reasonably have expected its acts and business activities to have consequences within the State of New York, County of Nassau.

40.     That at all times hereinafter mentioned, Defendant business, VK APPRAISAL SERVICES, derived substantial revenues from local and/or interstate commerce.

41.     That at all times hereinafter mentioned, Defendant VIVIAN D. KAMATH was/is a resident of the State of New York.

42.     That at all times hereinafter mentioned, Defendant VIVIAN D. KAMATH was/is a real estate appraiser, licensed by the State of New York.

43.     That at all times hereinafter mentioned, Defendant VIVIAN D. KAMATH was/is an employee and/or officer of Defendant business VK APPRAISAL SERVICES.

44.     That at all times hereinafter mentioned, Defendant business, MKM ABSTRACT SERVICES, was a duly organized corporation incorporated under the laws of the State of New York.

45.     That at all times hereinafter mentioned, Defendant business, MKM ABSTRACT SERVICES was a duly organized corporation doing and transacting business in the State of New York, County of Nassau.

46. That at all times hereinafter mentioned, Defendant business, MKM ABSTRACT SERVICES, regularly does and/or solicits business within the State of New York, County of Nassau.

47. That at all times hereinafter mentioned, Defendant business, MKM ABSTRACT SERVICES expected or should reasonably have expected its acts and business activities to have consequences within the State of New York, County of Nassau.

48. That at all times hereinafter mentioned, Defendant business, MKM ABSTRACT SERVICES, derived substantial revenues from local and/or interstate commerce.

49. That at all times hereinafter mentioned, Defendant business, AURORA BANK, F.S.B a/k/a AURORA MSF LEHMAN, was a federal savings bank doing and transacting business in the State of New York, County of Nassau.

50. That at all times hereinafter mentioned, Defendant business, AURORA BANK, F.S.B a/k/a AURORA MSF LEHMAN, regularly does and/or solicits business within the State of New York, County of Nassau.

51. That at all times hereinafter mentioned, Defendant business, AURORA BANK, F.S.B a/k/a AURORA MSF LEHMAN expected or should reasonably have expected its acts and business activities to have consequences within the State of New York, County of Nassau.

52. That at all times hereinafter mentioned, Defendant business, AURORA BANK, F.S.B a/k/a AURORA MSF LEHMAN, derived substantial revenues from local and/or interstate commerce.

## STATEMENT OF FACTS

53.     That on or about September 22, 2006, the Plaintiffs, Newbys, sold their former residence located 178 Island Parkway, Island Park, NY 11558 ("ISLAND PARK RESIDENCE") for Five Hundred Forty-Nine Thousand ($549,000.00) Dollars.

54.     That on or about September 27, 2006, The Plaintiffs, Newbys, purchased their current residence located at 14 Prescott Street, Lido Beach, NY 11561 ("MORTGAGED PREMISES" or "LIDO BEACH RESIDENCE") from the previous owners of said residence, LARRY WAGNER and CAROL WAGNER ("WAGNERS") for One Million Six Hundred Thousand ($1,600,000.00) Dollars.    Thereafter the Newbys' purchase of the Lido Beach Residence from the Wagners, on or about September 27, 2006, the Wagners then purchased and occupied their current residence at 4531 Brennan Place, Island Park, NY 11558 ("BRENNAN PLACE RESIDENCE") for One Million Seven Hundred Thousand ($1,700,000.00) Dollars from JONATHAN J. SIMON ("SIMON").

55.     Upon information and belief, Defendant THOMAS TRIPODI ("TRIPODI"), a licensed real estate broker for Defendant COLDWELL BANKERS BEACH WEST REALTY ("COLDWELL") was the listing and/or selling broker for: (a) the sale of Plaintiffs' Island Park Residence (i.e. therein the listing broker) for Five Hundred Forty-Nine Thousand ($549,000.00) Dollars; (b) the sale of Plaintiffs' Lido Beach Residence (i.e., therein both the listing and selling broker) for One Million Six Hundred Thousand ($1,600,000.00); and (c) the sale of the Brennan Place Residence (i.e., therein both the listing and selling broker) for One Million Seven Hundred Thousand ($1,700,000.00) Dollars.

56.     Upon information and belief, Defendants Tripodi and/or Coldwell earned a real estate broker commission for brokering: (a) the sale of Plaintiffs' Island Park Residence (i.e.

therein the listing broker) for Five Hundred Forty-Nine Thousand ($549,000.00) Dollars; (b) the sale of Plaintiffs' Lido Beach Residence (i.e., therein both the listing and selling broker) for One Million Six Hundred Thousand ($1,600,000.00); and (c) the sale of the Brennan Place Residence (i.e., therein both the listing and selling broker) for One Million Seven Hundred Thousand ($1,700,000.00) Dollars for a total commission amount of Two Hundred Forty-Three Thousand Four Hundred Eighty ($243,480.00) Dollars.

57.     Upon information and belief, the sale price for Plaintiffs' Lido Beach Residence was One Million Six Hundred Thousand ($1,600,000.00) dollars, but the sale of said residence was in jeopardy when two appraisals determined the fair market value of the same was no more than Nine Hundred Twenty Three Thousand ($923,000.00) dollars, which then in turn placed into jeopardy the sale of the Island Park Residence for Five Hundred Forty-Nine Thousand ($549,000.00) Dollars and the sale of the Brennan Place Residence for One Million Seven Hundred Thousand ($1,700,000.00) Dollars, all amounting to the jeopardy of Defendants Tripodi's and/or Coldwell's total commissions of Two Hundred Forty-Three Thousand Four Hundred Eighty ($243,480.00) Dollars.

58.     Upon information and belief, Defendant Tripodi took it upon himself and personally contacted Defendant ANTHONY BENANTI ("BENANTI") an agent of Defendant RMV APPRAISALS ("RMV") to perform a third appraisal of Plaintiff's Lido Beach Residence, which Benanti subsequently appraised said residence on August 22, 2006 for One Million Six Hundred Thousand ($1,600,000.00) dollars, which was indisputably the exact dollar amount of the purchase price.

59.     Upon information and belief, Defendant business SAGE CREDIT COMPANY, INC a/k/a SAGE CREDIT COMPANY, LLC, d/b/a DCG HOME LOANS, INC ("SAGE"),

originated Plaintiff's mortgage, despite not being licensed by the New York State Banking Department to conduct business in this State.

60.     Upon information and belief, Defendant SARA COUGHLIN ("COUGHLIN") signed, who is not licensed by the New York State Banking Department to originate loans in New York did sign Plaintiff's mortgage loan application (the "1003").

61.     As for the financing for the Plaintiffs purchase of the Lido Beach Residence, the financing and settlement services were collectively arranged and provided by RMV, SAGE, COUNTRYWIDE FINANCIAL CORPORATION ("CFC"), a Delaware corporation now known as BANK OF AMERICA CORPORATION ("BAC"), a Delaware corporation, as successor in interest; BANK OF AMERICA, N.A. ("BOA"), as successor by merger to BAC HOME LOANS SERVICING, LP f/k/a COUNTRYWIDE HOME LOANS SERVICING, LP, and as successor by merger to COUNTRYWIDE BANK, F.S.B f/k/a COUNTRYWIDE BANK, N.A.; COUNTRYWIDE HOME LOANS, INC., a New York corporation d/b/a AMERICA'S WHOLESALE LENDER ("COUNTRYWIDE"); COUNTRYWIDE TAX SERVICES CORPORATION ("CWT"), LANDSAFE, INC. ("LANDSAFE"), a Delaware corporation and its subsidiaries; LANDSAFE APPRAISAL SERVICES, INC. ("LAS"), a California corporation; LANDSAFE CREDIT, INC. ("LCI"), a California Corporation and; LANDSAFE FLOOD DETERMINATION, INC. ("LFD"), a California corporation, MKM ABSTRACT SERVICES ("MKM"), and VK APPRAISAL SERVICES ("VK").

62.     As for the above referenced parties' collective participation with regard to the financing of the Lido Beach Residence purchase; which was broken down into two (2) separate mortgages the first being for One Million Two Hundred Eighty Thousand ($1,280,000.00) dollars and the second being for One Hundred Sixty Thousand ($160,000.00) dollars of the

Plaintiffs purchase of the Lido Beach Residence, the Plaintiffs paid in total Twenty-Two Thousand Fourteen ($22,014.00) dollars. Also, it should be noted that SAGE was paid Six Thousand Four Hundred ($6400.00) dollars by COUNTRYWIDE in YIELD SPREAD PREMIUM ("YSP") which is compensation paid directly by a lender to a broker as reward for selling the borrowers an interest rate on their mortgage that which is higher than the rate that the borrowers actually qualified for.

63. Upon information and belief, Defendants SAGE and COUNTRYWIDE offered Plaintiffs a first mortgage with a "Teaser Rate" which was not properly disclosed and is prohibited by the New York State Banking Department. Specifically, Plaintiffs were offered a Negative Amortization Option Adjustable Rate Mortgage ("OPTION-ARM") where Plaintiffs' first mortgage payment due on or about December 1, 2006 was at 1.5% interest rate and Plaintiffs' second payment due on or about January 1, 2007 unexpectedly ballooned to 8.25%.

64. Upon information and belief, the funding was provided in part by VK's appraisal review on behalf of the above referenced Defendants in which Defendant VIVIAN D. KAMATH ("KAMATH"), an agent of Defendant VK performed an appraisal review on September 5, 2006 of the appraisal performed by Benanti and RMV dated August 22, 2006; in which Defendants Kamath and VK alleged the property was indeed valued at One Million Six Hundred Thousand ($1,600,000.00).

65. Upon information and belief, after closing the purchase of the Lido Beach Premises, in light of the unexpected increase in their mortgage payment due to the unlawful balloon of their interest rate, Plaintiffs submitted a loan application directly with Defendants COUNTRYWIDE and DAVID CONARY ("CONARY") to refinance their mortgage approximately two months after the closing date of the purchase, on or about November 2006.

66.     Upon information and belief, Defendants COUNTRYWIDE, LANDSAFE, LAS and appraiser JOHN ROWAN ("ROWAN") an agent of Defendants COUNTRYWIDE, LANDSAFE and LAS, based the refinance loan amount off of the valuation of the Lido Beach Premises being One Million Six Hundred Thousand (\$1,600,000.00) dollars. Specifically, on February 6, 2007, Rowan, an appraisal agent employed by Defendants COUNTRYWIDE, LANDSAFE and LAS performed an appraisal review of the Lido Beach Premises where he stated that "Overall, the appraised value at \$1,600,000 appears high, but within the lender tolerances."

67.     Defendant COUNTRYWIDE arranged the refinance of the Plaintiffs Lido Beach Residence in two parts. Firstly, on February 20, 2007, Defendants COUNTRYWIDE and CONARY provided financing in the amount of Seven Hundred Sixty-Five Thousand (\$765,000.00) dollars in which Defendants CFC; BAC, BOA, COUNTRYWIDE, CWT, LANDSAFE, LANDSTAR TITLE AGENCY, INC. ("LTA"), LAS, LCI and LFD collectively charged and received Three Thousand Six Hundred Twenty-Three (\$3623.00) dollars in fees from Plaintiffs.

68.     The first refinance mortgage position arranged and funded by the above referenced parties was yet again another deceitful loan and not consistent with terms that the Plaintiffs had originally requested. Specifically, instead of being a thirty (30) year fixed rate mortgage, the Plaintiffs were duped into a signing a thirty (30) year mortgage that only had a fixed rate term of five (5) years, with a ten (10) year interest only payment period in which five (5) years after the execution date of February 20, 2007, the loan then transitions into another adjustable rate mortgage for the remaining twenty-five (25) years of the loan amortization.

69.     Upon information and belief, the terms of the first refinance mortgage were abhorrent and egregious when considering the loan was based upon excellent consumer credit scores, full income and asset verification, as well based off of only a fifty percent (50%) loan-to-value ("LTV") ratio, which usually would grant a borrower with these credentials prime rate financing.

70.     The second part of the refinancing of the Plaintiffs' Lido Beach Premises was submitted to COUNTRYWIDE and closed by CWB as a Home Equity Line of Credit ("HELOC") mortgage on April 26, 2007 in the amount of Two Hundred Thousand ($200,000.00) dollars, where yet again, the property value of the Lido Beach Residence as of the date of the closing was valued by Defendants COUNTRYWIDE, BAC, BOA, LANDSAFE, LAS and Rowan as being One Million Six Hundred Thousand ($1,600,000.00) dollars.

71.     Upon information and belief, being that COUNTRYWIDE fully knew that the loan was based upon a completely bogus appraised value, upon closing the Defendant COUNTRYWIDE immediately sold, transferred or assigned Plaintiffs' first mortgage to AURORA BANK, F.S.B. a/k/a AURORA MSF LEHMAN ("AURORA").

72.     Upon information and belief, when Plaintiffs first became aware that the value of their Lido Beach Residence may have been originally and consistently fraudulently inflated by the Defendants occurred when Defendant COUNTRYWIDE terminated the Plaintiffs' ability to draft funds from Plaintiffs' HELOC second mortgage on January 25, 2008, citing the value of the Plaintiffs' Lido Beach Residence was only Eight Hundred Ninety Thousand Five Hundred Forty-Five ($890,545.00) dollars, which was only even recognized by COUNTRYWIDE as being even that high after Plaintiffs submitted to COUNTRYWIDE Four Hundred Five

Thousand Fifty-Five ($405,055.00) dollars of home improvement receipts performed to the Lido Beach Premises.

> AS AND FOR A FIRST CAUSE OF ACTION BY THE PLAINTIFFS, HUNTER NEWBY AND CANDACE NEWBY AGAINST DEFENDANTS BANK OF AMERICA CORPORATION, A DELAWARE CORPORATION AS SUCCESSOR IN INTEREST TO COUNTRYWIDE FINANCIAL CORPORATION, MKM ABSTRACT SERVICES, COLDWELL BANKERS BEACH WEST, THOMAS TRIPODI, SAGE CREDIT COMPANY, INC. A/K/A SAGE CREDIT COMPANY, LLC D/B/A DCG HOME LOANS, INC., COUNTRYWIDE FINANCIAL CORPORATION, A DELAWARE CORPORATION, RMV APPRAISALS, ANTHONY BENANTI, COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC., A NEW YORK COMPANY D/B/A AMERICA'S WHOLESALE LENDER, DAVID CONARY, COUNTRYWIDE TAX SERVICES CORP., LANDSAFE, INC., LANDSAFE APPRAISAL SERVICES, INC., LANDSAFE CREDIT, INC., LANDSAFE FLOOD DETERMINATION, INC., SARA COUGHLIN, VIVIAN D. KAMATH, VK APPRAISALS, COUNTRYWIDE BANK, N.A. AND LANDSTAR TITLE AGENCY, INC. FOR MISREPRESENTATION AND/OR OMISSION

73.    Plaintiffs repeat and reiterate paragraphs numbered and/or designated "1" through "72" inclusive, with the same force and effect and as if fully stated herein at length.

74.    Defendants falsely, misleadingly and repeatedly misrepresented to Plaintiffs the true value of the Lido Beach Residence, in that Defendants falsely and misleadingly misrepresented to Plaintiffs the value of said Residence was One Million Six Hundred Thousand ($1,600,000.00) dollars.

75.    That these representations Defendants made to Plaintiffs regarding the value of the Lido Beach Residence were all false at the times they were made and/or determined, as the value of said residence as appraised was greatly inflated given two previous appraisals determined the value of the same was less than one million ($1,000,000.00) dollars.

76.   Defendants knew or should have known the representations that the Lido Beach Residence was valued at One Million Six Hundred Thousand ($1,600,000.00) dollars were all false at the times they were made and/or determined.

77.   The repeated misrepresentations Defendants made regarding the value of the Lido Beach Residence were all material facts with the intent to induce Plaintiffs to sell their Island Park Residence and take out a mortgage to purchase the Lido Beach Residence.

78.   Plaintiffs reasonably relied on the repeated representations of the Defendants that the Lido Beach Residence was worth One Million Six Hundred Thousand ($1,600,000.00) dollars in making their decision to sell their Island Park Residence and take out a mortgage to purchase the Lido Beach Residence.

79.   Plaintiffs did not discover the over inflated value of the Lido Beach Residence they purchased until after Plaintiffs sold their Island Park Residence, took out a mortgage to purchase the Lido Beach Residence, refinanced said mortgage with Defendant Countrywide; and their HELOC draftability was terminated because the value of said Residence was less than one million dollars.

80.   Plaintiffs would not have sold their Island Park Residence and/or took out a mortgage to purchase the Lido Beach Residence for One Million Six Hundred Thousand ($1,600,000.00) dollars had the value of said Residence was not repeatedly misrepresented to them by the Defendants.

81.   As a result of the repeated misrepresentations made by Defendants regarding the value of the Lido Beach Residence, Plaintiffs have suffered damages in excess of Six Hundred Seventy-Seven Thousand ($677,000.00) dollars or an amount to be determined at trial.

AS AND FOR A SECOND CAUSE OF ACTION BY THE PLAINTIFFS,
HUNTER NEWBY AND CANDACE NEWBY AGAINST DEFENDANTS
BANK OF AMERICA CORPORATION, A DELAWARE CORPORATION
AS SUCCESSOR IN INTEREST TO COUNTRYWIDE FINANCIAL
CORPORATION, MKM ABSTRACT SERVICES, COLDWELL
BANKERS BEACH WEST, THOMAS TRIPODI, SAGE CREDIT
COMPANY, INC. A/K/A SAGE CREDIT COMPANY, LLC D/B/A DCG
HOME LOANS, INC., COUNTRYWIDE FINANCIAL CORPORATION, A
DELAWARE CORPORATION, RMV APPRAISALS, ANTHONY
BENANTI, COUNTRYWIDE FINANCIAL CORPORATION,
COUNTRYWIDE HOME LOANS, INC., A NEW YORK COMPANY
D/B/A AMERICA'S WHOLESALE LENDER, DAVID CONARY,
COUNTRYWIDE TAX SERVICES CORP., LANDSAFE, INC.,
LANDSAFE APPRAISAL SERVICES, INC., LANDSAFE CREDIT, INC.,
LANDSAFE FLOOD DETERMINATION, INC., SARA COUGHLIN,
VIVIAN D. KAMATH, VK APPRAISALS, COUNTRYWIDE BANK, N.A.
AND LANDSTAR TITLE AGENCY, INC.FOR NEGLIGENT
MISREPRESENTATION AND/OR OMISSION

82.    Plaintiffs repeat and reiterate paragraphs numbered and/or designated "1" through
"81" inclusive, with the same force and effect and as if fully stated herein at length.

83.    Defendants owed a duty of reasonable care to Plaintiff to provide accurate and
complete information about the value of the Lido Beach Residence when they undertook the
responsibility to provide an appraisal to help Plaintiff determine whether they should sell their
Island Park Residence and/or to take out a mortgage to purchase the Lido Beach Residence.

84.    In particular, Defendants owed a duty to Plaintiffs to provide truthful and accurate
information with respect to each of their respective roles with regards to matter referenced herein
as well as report and inform the Plaintiffs of any conflicts of interest, presence or appearance of
collusion by any two or more parties and inaccurate, false, and/or fraudulent acts or assessments
made by any one of the parties referenced herein.

85.    Defendants negligently and repeatedly misrepresented and/or omitted material
information about the value of the Lido Beach Residence prior to, as well as after Plaintiffs
making their decision to sell their Island Park Residence and/or to take out a mortgage to

purchase the Lido Beach Residence at the inflated price of One Million Six Hundred Thousand ($1,600,000.00) dollars.

86.     Defendants made such representations about the value of the Lido Beach Residence for the guidance of Plaintiffs without due care and competence and in absolute disregard of various other information sources illustrating the falsity of such value and of the true value of said Residence.

87.     The representations and/or omissions made by the Defendants to Plaintiffs regarding the value of the Lido Beach Residence were all false at the times they were made and/or determined.

88.     Plaintiffs did not discover the over inflated value of the Lido Beach Residence they purchased until after Plaintiffs sold their Island Park Residence, took out a mortgage to purchase the Lido Beach Residence, refinanced said mortgage with Defendant Countrywide; and their HELOC was terminated because the value of said Residence was less than one million dollars.

89.     Plaintiffs would not have sold their Island Park Residence and/or took out a mortgage to purchase the Lido Beach Residence for $1.6 million dollars had the value of said Residence not been repeatedly misrepresented to them by Defendants.

90.     As a result of the repeated misrepresentations made by Defendants regarding the value of the Lido Beach Residence, Plaintiffs have suffered damages in excess of Six Hundred Seventy-Seven Thousand ($677,000.00) dollars or an amount to be determined at trial.

AS AND FOR A THIRD CAUSE OF ACTION BY THE PLAINTIFFS,
HUNTER NEWBY AND CANDACE NEWBY AGAINST DEFENDANTS
BANK OF AMERICA CORPORATION, A DELAWARE CORPORATION
AS SUCCESSOR IN INTEREST TO COUNTRYWIDE FINANCIAL
CORPORATION, MKM ABSTRACT SERVICES, COLDWELL
BANKERS BEACH WEST, THOMAS TRIPODI, SAGE CREDIT
COMPANY, INC. A/K/A SAGE CREDIT COMPANY, LLC D/B/A DCG
HOME LOANS, INC., COUNTRYWIDE FINANCIAL CORPORATION, A
DELAWARE CORPORATION, RMV APPRAISALS, ANTHONY
BENANTI, COUNTRYWIDE FINANCIAL CORPORATION,
COUNTRYWIDE HOME LOANS, INC., A NEW YORK COMPANY
D/B/A AMERICA'S WHOLESALE LENDER, DAVID CONARY,
COUNTRYWIDE TAX SERVICES CORP., LANDSAFE, INC.,
LANDSAFE APPRAISAL SERVICES, INC., LANDSAFE CREDIT, INC.,
LANDSAFE FLOOD DETERMINATION, INC., SARA COUGHLIN,
VIVIAN D. KAMATH, VK APPRAISALS, COUNTRYWIDE BANK, N.A.
AND LANDSTAR TITLE AGENCY, INC. FOR APPRAISAL FRAUD

91.    Plaintiffs repeat and reiterate paragraphs numbered and/or designated "1" through "90" inclusive, with the same force and effect and as if fully stated herein at length.

92.    Due to the importance of appraisals in the home lending market, State and Federal statutes and regulations require that appraisals be accurate and independent.

93.    Specifically, all appraisals must comply with the Uniform Standards of Professional Appraisal Practice ("USPAP"), which is codified into Federal law 12 C.F.R. § 34.44 and requires appraisers to conduct their appraisals independently and accurately.

94.    Federal statutes and USPAP imposes the following requirement to ensure the accuracy of all real estate appraisals: (1) an appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of person interests; (2) an appraiser must not perform as an advocate for any party or issue; (3) an appraiser must not accept an assignment that includes the reporting of pre-determined opinions and conclusions; and (4) it is unethical for an appraiser to accept an assignment, or to have a compensation arrangement for an assignment, that is contingent on any of the following: the reporting of a pre-

determined result, a direction in assignment results that favors the cause of the client, the amount of a value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the appraiser's opinion and specific to the assignment purpose.

95.   The Code of Federal Regulations provides that an in-house or staff appraiser at a bank "must be independent of the lending, investment and collection functions and not involved, except as an appraiser, in the federally related transaction, and have no direct or indirect interest, financial or otherwise in the property." 12 C.F.R. § 34.45

96.   For appraisers who are independent contractors or "fee" appraisers, the regulation states that "the appraiser shall be engaged directly by the regulated institution or its agents, and have no direct or indirect interest, financial, or otherwise in the property transaction." 12 C.F.R. § 34.45

97.   Plaintiffs allege that Defendants non-compliance with USPAP and Federal statutes with regards to providing them with three appraisals and/or appraisal reviews that were inflated the value of the Lido Beach Residence amounts to appraisal fraud.

98.   Specifically, Defendants failed to conduct a physical inspection of the Lido Beach Residence and instead used recent sale of homes in the area that were not comparable to said Residence because Defendant's knew Plaintiff will rely of the result of the three appraisals and/or appraisal reviews because Defendants knew or should have known that Plaintiffs would rely on the result of three appraisals and/or appraisal reviews in order to make their decision to sell their Island Park Residence and/or to take out a mortgage to purchase the Lido Beach Residence at the inflated price of One Million Six Hundred Thousand ($1,600,000.00) dollars.

99.   Defendants further violated USPAP and Federal Statutes by performing the third appraisal that had a pre-determined value for the Lido Beach Residence of One Million Six

Hundred Thousand ($1,600,000.00) dollars to falsely represent to Plaintiffs because Defendants knew or should have known that Plaintiffs would rely on the result of the three appraisals and/or appraisal reviews in order to make their decision to sell their Island Park Residence and/or to take out a mortgage to purchase the Lido Beach Residence at the inflated price of One Million Six Hundred Thousand ($1,600,000.00) dollars.

100.    Defendants also had monetary incentive to provide an appraisal that falsely showed the value of the Lido Beach Residence to be One Million Six Hundred Thousand ($1,600,000.00) dollars.

101.    Specifically, the sale of the said Residence was in jeopardy because two prior appraisals showed the value of the Lido Beach Residence to be at least Nine Hundred Twenty-Three Thousand ($923,000.00) dollars or Six Hundred Seventy-Seven Thousand ($677,000.00) dollars less than the One Million Six Hundred Thousand ($1,600,000.00) dollar sale price. If an appraisal did not show the value of said Residence to be One Million Six Hundred Thousand ($1,600,000.00) dollars, then Defendants Countrywide cannot approve a mortgage for Plaintiff in the amount of One Million Six Hundred Thousand ($1,600,000.00) dollars to purchase the same; and if the sale of the Lido Beach Residence did not go through because there were no appraisals showing the value of said Residence was One Million Six Hundred Thousand ($1,600,000.00) dollars, then Defendants Coldwell and Tripodi would stand to lose Two Hundred Forty-Three Thousand Four Hundred Eighty ($243,480.00) dollars in real estate commission; and the other Defendants would not have received Thirty-Two Thousand Two Hundred Ninety ($32,390.00) dollars in related fees.

102.    In order to save the deal for Plaintiffs to purchase the Lido Beach Residence and Defendants can earn their respective fees and commissions, Defendants arranged for a three

additional appraisals and/or appraisal reviews to be preformed that showed the value of said Residence to be One Million Six Hundred Thousand ($1,600,000.00) dollars to present to Plaintiffs because Defendants knew or should have known that Plaintiffs would rely on the results of these appraisals in order to make their decision to sell their Island Park Residence and/or to take out a mortgage to purchase the Lido Beach Residence at the inflated price of One Million Six Hundred Thousand ($1,600,000.00) dollars.

103.    Plaintiffs did, in fact, rely on the three appraisals and/or appraisal reviews that showed the value of the Lido Beach Residence was One Million Six Hundred Thousand ($1,600,000.00) dollars and made their decision to sell their Island Park Residence and/or to take out a mortgage to purchase the Lido Beach Residence at the inflated price of One Million Six Hundred Thousand ($1,600,000.00) dollars.

104.    When Plaintiffs finalized the purchase of the Lido Beach Residence at the inflated sale price of One Million Six Hundred Thousand ($1,600,000.00) dollars, all of the Defendants benefitted monetarily by earning their respective fees and commissions.

105.    Plaintiffs did not discover the over inflated value of the Lido Beach Residence they purchased until after Plaintiffs sold their Island Park Residence, took out a mortgage to purchase the Lido Beach Residence, refinanced said mortgage with Defendant Countrywide; and their HELOC's draftability was terminated because the value of said Residence was less than one million dollars.

106.    Plaintiffs would not have sold their Island Park Residence and/or took out a mortgage to purchase the Lido Beach Residence for One Million Six Hundred Thousand ($1,600,000.00) dollars had the value of said Residence not been repeatedly misrepresented to them by Defendants and/or relied on the series of fraudulent appraisals.

107.  As a result of the three fraudulent appraisals that falsely showed the value of the Lido Beach Residence being One Million Six Hundred Thousand ($1,600,000.00) dollars, Plaintiffs have suffered damages in excess of Six Hundred Seventy-Seven Thousand ($677,000.00) or an amount to be determined at trial.

### AS AND FOR A FOURTH CAUSE OF ACTION BY THE PLAINTIFFS, HUNTER NEWBY AND CANDACE NEWBY AGAINST DEFENDANTS BANK OF AMERICA CORPORATION, A DELAWARE CORPORATION AS SUCCESSOR IN INTEREST TO COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE FINANCIAL CORPORATION, A DELAWARE CORPORATION, COUNTRYWIDE HOME LOANS, INC., A NEW YORK COMPANY D/B/A AMERICA'S WHOLESALE LENDER, COUNTRYWIDE TAX SERVICES CORP., LANDSAFE, INC., LANDSAFE APPRAISAL SERVICES, INC., LANDSAFE CREDIT, INC., LANDSAFE FLOOD DETERMINATION, INC., COUNTRYWIDE BANK, N.A. AND LANDSTAR TITLE AGENCY, INC. FOR VIOLATING THE RACKETEER INFLUENCED & CORRUPT ORGANIZATIONS ACT

108.  Plaintiffs repeat and reiterate paragraphs numbered and/or designated "1" through "107" inclusive, with the same force and effect and as if fully stated herein at length.

109.  In order to state a valid claim under the Racketeer Influenced & Corrupt Organizations ("RICO") Act, "a plaintiff must allege that a person who was employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce' conducted or participated in the 'enterprise's affairs through a pattern of racketeering activity." 18 USC § 1962(c).

110.  A "pattern of racketeering activity" includes an indictable act under federal criminal laws including mail fraud, wire fraud, obstruction of justice, etc... A RICO Plaintiff must plead both "the pattern of racketeering activity" and the violation of federal criminal law that comprise the pattern of racketeering activity.

111. Finally, it must be alleged that the RICO person(s) participated or directed the affairs of the enterprise; the enterprise affairs affect interstate or foreign commerce or that the enterprise itself affects interstate or foreign commerce; and that the plaintiff was injured as a result of the statutory violation of 18 USC § 1962.

112. Here, Plaintiffs indentify the enterprise as including Bank of America Corporation, a Delaware Corporation as Successor in Interest to Countrywide Financial Corporation, Countrywide Financial Corporation, a Delaware Corporation, Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP, and as successor by merger to Countrywide Bank, F.S.B. f/k/a Countrywide Bank, N.A.; Countrywide Home Loans, Inc., a New York company d/b/a America's Wholesale Lender, Countrywide Tax Services Corp., Landsafe, Inc., Landsafe Appraisal Services, Inc., Landsafe Credit, Inc., Landsafe Flood Determination, Inc. and Landstar Title Agency, Inc. ("THE COUNTRYWIDE ENTERPRISE") and that through a pattern of racketeering activities that affected interstate commerce, the Plaintiffs were injured when the Enterprise violated 18 USC § 1962.

A. THE RICO ALLEGATIONS

1. The Countrywide Broker Enterprise

113. The Defendants in this action are all "persons" within the meaning of 18 USC § 1961(c).

114. Based upon Plaintiffs' current knowledge, the following persons constitute a group of individuals associated in fact that will be referred to herein as the "Countrywide Broker Enterprise": (1) Bank of America Corporation, a Delaware Corporation as Successor in Interest to Countrywide Financial Corporation; (2) Countrywide Financial Corporation, a Delaware

Corporation; (3) Countrywide Home Loans, Inc., a New York company d/b/a America's Wholesale Lender; (4) Countrywide Tax Services Corp.; (5) Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP, and as successor by merger to Countrywide Bank, F.S.B. f/k/a Countrywide Bank, N.A.; (6) Landsafe, Inc.; (7) Landsafe Appraisal Services, Inc.; (8) Landsafe Credit, Inc.; (9) Landsafe Flood Determination, Inc.; and (10) Landstar Title Agency, Inc. and other appraisers and mortgage brokers either named or not named herein as Defendants who have contracts with any of the Countrywide Enterprise pursuant which they sell, arrange, promote or otherwise assist Countywide in directing the appraisals of property and/or borrowers into loans issued by Countrywide.

115.    The Countrywide Broker Enterprise is and/or was an ongoing organization that engages in, and whose activities affect interstate commerce at the time Plaintiffs purchased their Lido Beach Residence.

116.    While all Defendants participate in and are members and part of the Countrywide Broker Enterprise, they also have an existence separate and distinct from the Enterprise.

117.    In order to successfully steer as many borrowers as possible into inappropriate subprime loans, Defendants need a system that allows them to effectively promote these loans. The Countrywide Broker Enterprise through the participation by above referenced Defendants (1) through (10) and their respective subsidiaries which collectively provides Defendants with a system and ability, under the Enterprise's control of and participation in, that which is all necessary for the successful operation of their scheme.

118.    Furthermore, the participation by the LandSafe subsidiaries in the Countrywide Broker Enterprise allowed the Enterprise to function more effectively, given that many of the

functions provided by these entities, such as appraisals, would normally be conducted by independent entities. LandSafe's participation in the enterprise allowed the normal checks and balances within the mortgage process to be eliminated, permitting Defendants to advance their scheme and conceal the fraudulent activity they were engaging in.

119.   The Defendants control and operate the Countrywide Broker Enterprise as follows: (1) Defendants issue the standardized sales manual to be followed by all Countrywide loan officers, agents and independent mortgage brokers soliciting loans on Countrywide's behalf when soliciting borrowers to obtain a Countrywide originated mortgage loan; (2) Defendants determine the commission and fee structure to be paid to all Countrywide brokers and authorized brokers, rewarding and incentivizing them with commission and rewards to offer borrowers loan with less favorable terms than they would otherwise qualify for; (3) Defendants provide Countrywide Brokers and authorized brokers access to its Countrywide Loan Underwriting Expert System ("CLUES"), which was utilized to steer borrowers to more costly loans; and (4) Defendants steer Countrywide brokers and authorized brokers to utilize Countrywide's LandSafe subsidiaries for certain closing costs associated with the loan, all of which are ultimately paid by the borrowers.

120.   The Countrywide Broker Enterprise has an ascertainable structure and apart from the pattern of racketeering activity in which the Defendants engage.

### 2.   Alternative Enterprise Allegations: the Countrywide Enterprise

121.   The Defendants in this action are all "persons" within the meaning of 18 USC § 1961(c).

122.   Based upon Plaintiffs' current knowledge, the following persons constitute a group of individuals associated in fact that will be referred to herein as the "Countrywide

Enterprise": (1) Bank of America Corporation, a Delaware Corporation as Successor in Interest to Countrywide Financial Corporation; (2) Countrywide Financial Corporation, a Delaware Corporation; (3) Countrywide Home Loans, Inc., a New York company d/b/a America's Wholesale Lender; (4) Countrywide Tax Services Corp.; (5) Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP, and as successor by merger to Countrywide Bank, F.S.B. f/k/a Countrywide Bank, N.A.; (6) Landsafe, Inc.; (7) Landsafe Appraisal Services, Inc.; (8) Landsafe Credit, Inc.; (9) Landsafe Flood Determination, Inc.; and (10) Landstar Title Agency, Inc. and other appraisers and mortgage brokers either named or not named herein as Defendants who have contracts with any of the Countrywide Enterprise pursuant which they sell, arrange, promote or otherwise assist Countywide in directing the appraisals of property and/or borrowers into loans issued by Countrywide.

123.     The Countrywide Enterprise is and/or was an ongoing organization that engages in, and whose activities affect interstate commerce at the time Plaintiffs purchased their Lido Beach Residence.

124.     While all Defendants participate in and are members and part of the Countrywide Enterprise, they also have an existence separate and distinct from the Enterprise.

125.     In order to successfully steer as many borrowers as possible into inappropriate subprime loans, Defendants need a system that allows them to effectively promote these loans. The Countrywide Enterprise through the participation by above referenced Defendants (1) through (10) and their respective subsidiaries which collectively provides Defendants with a system and ability, under the Enterprise's control of and participation in, that which is all necessary for the successful operation of their scheme.

126.    Furthermore, the participation by the LandSafe subsidiaries in the Countrywide Enterprise allowed the Enterprise to function more effectively, given that many of the functions provided by these entities, such as appraisals, would normally be conducted by independent entities. LandSafe's participation in the enterprise allowed the normal checks and balances within the mortgage process to be eliminated, permitting Defendants to advance their scheme and conceal the fraudulent activity they were engaging in.

127.    The Defendants control and operate the Countrywide Enterprise as follows: (1) Defendants issue the standardized sales manual to be followed by all Countrywide loan officers, agents and independent mortgage brokers soliciting loans on Countrywide's behalf when soliciting borrowers to obtain a Countrywide originated mortgage loan; (2) Defendants determine the commission and fee structure to be paid to all Countrywide agents and authorized brokers, rewarding and incentivizing them with commission and rewards to offer borrowers loan with less favorable terms than they would otherwise qualify for; (3) Defendants provide Countrywide agents and authorized brokers access to its Countrywide Loan Underwriting Expert System ("CLUES"), which was utilized to steer borrowers to more costly loans; and (4) Defendants steer Countrywide agents and authorized brokers to utilize Countrywide's LandSafe subsidiaries for certain closing costs associated with the loan, all of which are ultimately paid by the borrowers.

128.    The Countrywide Enterprise has an ascertainable structure and apart from the pattern of racketeering activity in which the Defendants engage.

### 3.    Predicate Acts

129.    Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 USC § 1341 (relating to mail fraud) and 18 USC § 1343 (relating to wire

fraud). As set forth below, Defendants have engaged, and continue to engage, in conduct violating each of these laws to effectuate their scheme.

130. Additionally, in order to make their scheme effective, each of the Defendants sought to and did aid and abet the others in violating the above laws within the meaning of 18 USC § 2. As a result, their conduct is indictable under 18 USC § 1341 (relating to mail fraud) and 18 USC § 1343 (relating to wire fraud), on this additional basis.

### 4.   Violations of 18 USC § 1341 and 18 USC § 1343

131. For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, the Defendants, in violation 18 USC § 1341, placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matters and things to be delivered by interstate commercial interstate carriers, and received matter and things from the Postal Service or commercial interstate carriers, including but not limited to promotional materials, applications, agreements, manuals, and correspondence.

132. For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, the Defendants, in violation 18 USC § 1343, transmitted and received by wire, matter and things, including but not limited to promotional materials, applications, agreements, manuals, and correspondence and made or caused to be made false statements over the telephone, electronic mail, and internet.

133. The matter and things sent by Defendants via the Postal Service, commercial carrier, wire, or other interstate electronic media included, *inter-alia*, promotional materials,

applications, agreements, manuals, correspondence, progress reports, and loan application disclosures.

134. Other matter and things sent through or received via the Postal Service, commercial carrier, wire or other interstate electronic media by Defendants included information or communications in furtherance of or necessary to effectuate the scheme.

135. Defendants' misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving Plaintiffs and obtaining their property for Defendants' gain.

136. Defendants either knew or recklessly disregarded the fact that the misrepresentations and omissions described above were material, and Plaintiffs relied upon the misrepresentations and omissions as set forth above.

137. As a result, Defendants have obtained money and property belonging to the Plaintiffs, Plaintiffs has been injured in their business or property by the Defendants' overt acts of mail or wire fraud.

### 4. Pattern of Racketeering Activity

138. The Defendants have engaged in a "pattern of racketeering activity", as defined by 18 USC § 1961(5), by committing or aiding and abetting in the commission of at least two acts of racketeering activity, i.e., indictable violations of 18 USC §§ 1341 and 1343 as described above, within the past four years.

139. In fact, each of the Defendants have committed or aided and abetted in the commission of thousands of acts of racketeering activity. Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims, including Plaintiffs.

01/10/2012   1:40PM

140.    The multiple acts of racketeering activity that Defendants committed and/or conspired to commit, or aided and abetted in the commission of, were related to each other, and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 USC § 1961(5).

        **5.    RICO Violations**

141.    Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity..."

142.    Through the patterns of racketeering activities outlined above, the Defendants have also conducted and participated in the affairs of the Countrywide Broker Enterprise, on in the alternative, the Countrywide Enterprise.

143.    Section 1962(d) of RICO makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b) or (c), of this section.

144.    Defendants' conspiracy to secure money from Plaintiff for their own use through the fraudulent scheme described above violates 18 USC § 1962(d).

145.    Each of the Defendants agreed to participate, directly or indirectly, in the conduct of the affairs of the Countrywide Broker Enterprise, on in the alternative, the Countrywide Enterprise, through a pattern of racketeering activity comprised of numerous acts of mail fraud and wire fraud, and each Defendants so participated in the 18 USC § 1962(c), did in fact caused Plaintiffs to be injured in their business or property by the Defendants' overt acts of mail or wire fraud.

6.    Fraudulent Concealment

146.    Although, pursuant to Countrywide's policies and practices, borrowers are pushed into subprime loans irrespective of their appropriateness to the borrower, Countrywide's advertisements, marketing materials, telemarketing scripts and financing documents universally create and foster the image that Countrywide offers the "best possible" loans available to borrowers based upon credit-risk and other objective factors.

147.    Despite spending millions of dollars annually on advertising, marketing materials, and the creation and distribution of Countrywide financing documents that falsely create and foster the image that Countrywide offers the best possible loans available to borrowers at competitive rates that are objectively set based upon credit-risk and other objective standards, Countrywide never discloses the truth to its credit applicants that it has authorized and provided a financial incentive to its loan officers, authorized brokers and correspondent lender to direct homeowners who are qualified for more favorable loans into subprime loans and other far less favorable loan products, <u>as well as failed to disclose that Countrywide would ultimately have no problem funding a bad loan with a fraudulent appraised value knowing that they were going to sell the loan to another party anyways.</u>

148.    Countrywide's customers, due to the inherent nature of Countrywide's undisclosed system and due to Countrywide's deception and concealment, have no way of knowing or suspecting (1) the existence of Countrywide's wrongful practices; and (2) that they received a loan that is far less favorable than that which they were qualified to receive.

COUNT I

VIOLATION OF RICO 18 USC § 1962 (c)

149.    Plaintiffs repeat and reiterate paragraphs numbered and/or designated "1" through "148" inclusive, with the same force and effect and as if fully stated herein at length.

150.    This claim for relief arises under 18 USC § 1964 (c).

151.    As set forth above, Defendants have violated 18 USC § 1962(c) by conducting, or participating directly or indirectly in the conduct of, the affairs of the Countrywide Broker Enterprise, or in the alternative, the Countrywide Enterprise, through a pattern of racketeering.

152.    As a direct and proximate result, Plaintiffs have been injured in their business or property by the predicate acts which make up the Defendants' pattern of racketeering.

153.    Specifically, Plaintiffs have been injured in their business or property in a variety of ways, including the following: Plaintiffs were steered into loans whose complex terms have been misrepresented or inadequately disclosed to them suffer injury in that they take on financial burdens that they would not otherwise have taken on and suffer destructive impact on their financial well-being of having to make monthly payments on a property not truly worth the value indicated by the Defendant that were difficult for them to afford, sometimes leading to significant prepayment penalties when they seek to refinance their mortgages at a more favorable rate, increases in the principal owed under certain types of loans, risks defaulting on their loans, losing their homes, destroying their credit, or financial ruin. Borrowers who experience unanticipated, dramatic rate increases, as in the case of adjustable rate mortgages that have a short fixed-rate period, or in the case of PayOption ARM loans, where the borrower's minimum monthly payment inevitably causes the loan to "recast" to a significantly higher monthly payment based on the negative amortization of the loan, suffer harm from the unexpected and onerous burdens created by their suddenly having to make a monthly payment in amounts that

greatly exceed what they committed to and can afford. The Plaintiffs as borrowers are also injured when, as a result of Defendants egregious and fraudulent acts, borrowers purchased a property for over Six Hundred Seventy-Seven Thousand ($677,000.00) more than the property was actually valued. Additionally, the Plaintiffs as borrowers who are charged inflated loan costs and other fees suffer injury in out-of-pocket costs over what they should have paid. When Plaintiffs obtained and/or refinanced from more traditional loans or take riskier loans than they otherwise could have obtained elsewhere, in the false belief that they are obtaining a loan on favorable terms, were injured by having to pay the difference between the fees and interest rates charged by Countrywide and those another lender would have charged.

## COUNT II
### VIOLATION OF RICO 18 USC § 1962(d) BY CONSPIRING TO VIOLATE 18 USC § 1962(c)

154. Plaintiffs repeat and reiterate paragraphs numbered and/or designated "1" through "153" inclusive, with the same force and effect and as if fully stated herein at length.

155. This claim for relief arises under 18 USC § 1964(c).

156. In violation of 18 USC § 1962(d), Defendants have, as set forth above, conspired to violate 18 USC § 1962(c) by conducting, or participating directly or indirectly in the conduct of the affairs of the Countrywide Broker Enterprise, or in the alternative the Countrywide Enterprise, through a pattern of racketeering.

157. As a direct and proximate result, Plaintiffs as borrowers have been injured in their business or property in a variety of ways, including the following: Plaintiffs were steered into loans whose complex terms have been misrepresented or inadequately disclosed to them suffer injury in that they take on financial burdens that they would not otherwise have taken on and suffer destructive impact on their financial well-being of having to make monthly payments on a

property not truly worth the value indicated by the Defendant that were difficult for them to afford, sometimes leading to significant prepayment penalties when they seek to refinance their mortgages at a more favorable rate, increases in the principal owed under certain types of loans, risks defaulting on their loans, losing their homes, destroying their credit, or financial ruin. Borrowers who experience unanticipated, dramatic rate increases, as in the case of adjustable rate mortgages that have a short fixed-rate period, or in the case of PayOption ARM loans, where the borrower's minimum monthly payment inevitably causes the loan to "recast" to a significantly higher monthly payment based on the negative amortization of the loan, suffer harm from the unexpected and onerous burdens created by their suddenly having to make a monthly payment in amounts that greatly exceed what they committed to and can afford. The Plaintiffs as borrowers are also injured when, as a result of Defendants egregious and fraudulent acts, borrowers purchased a property for over Six Hundred Seventy-Seven Thousand ($677,000.00) more than the property was actually valued. Additionally, the Plaintiffs as borrowers who are charged inflated loan costs and other fees suffer injury in out-of-pocket costs over what they should have paid. When Plaintiffs obtained and/or refinanced from more traditional loans or take riskier loans than they otherwise could have obtained elsewhere, in the false belief that they are obtaining a loan on favorable terms, were injured by having to pay the difference between the fees and interest rates charged by Countrywide and those another lender would have charged.

## COUNT III

### VIOLATION OF 18 USC § 2 BY SEEKING TO AND AIDING AND ABETTING IN THE VIOLATION OF 18 USC § 1962 (C)

158.   Plaintiffs repeat and reiterate paragraphs numbered and/or designated "1" through "157" inclusive, with the same force and effect and as if fully stated herein at length.

159.   This claim arises under 18 USC § 1964(c).

01/10/2012   1:40PM

160.    As set forth above, Defendants knowingly, and with shared intent, sought to, and have, aided and abetted each of the other Defendants in the commission of predicate acts, in engaging in a pattern of racketeering activity, and in violation of USC § 1962 (c) as described herein.

161.    As a result, under 18 USC § 2, the RICO violations of each Defendant are those of the others as if they had been committed directly by them.

162.    As a direct and proximate result of the fact that each Defendant aided and abetted the others in violating 18 USC § 2, the RICO violations of each Defendant are those of the others as if they had been committed directly by them.

163.    Specifically, Plaintiffs have been injured in their business or property in a variety of ways, including the following: Plaintiffs were steered into loans whose complex terms have been misrepresented or inadequately disclosed to them suffer injury in that they take on financial burdens that they would not otherwise have taken on and suffer destructive impact on their financial well-being of having to make monthly payments on a property not truly worth the value indicated by the Defendant that were difficult for them to afford, sometimes leading to significant prepayment penalties when they seek to refinance their mortgages at a more favorable rate, increases in the principal owed under certain types of loans, risks defaulting on their loans. losing their homes, destroying their credit, or financial ruin. Borrowers who experience unanticipated, dramatic rate increases, as in the case of adjustable rate mortgages that have a short fixed-rate period, or in the case of PayOption ARM loans, where the borrower's minimum monthly payment inevitably causes the loan to "recast" to a significantly higher monthly payment based on the negative amortization of the loan, suffer harm from the unexpected and onerous burdens created by their suddenly having to make a monthly payment in amounts that

greatly exceed what they committed to and can afford. The Plaintiffs as borrowers are also injured when, as a result of Defendants egregious and fraudulent acts, borrowers purchased a property for over Six Hundred Seventy-Seven Thousand ($677,000.00) more than the property was actually valued. Additionally, the Plaintiffs as borrowers who are charged inflated loan costs and other fees suffer injury in out-of-pocket costs over what they should have paid. When Plaintiffs obtained and/or refinanced from more traditional loans or take riskier loans than they otherwise could have obtained elsewhere, in the false belief that they are obtaining a loan on favorable terms, were injured by having to pay the difference between the fees and interest rates charged by Countrywide and those another lender would have charged.

> **AS AND FOR A FIFTH CAUSE OF ACTION BY THE PLAINTIFFS, HUNTER NEWBY AND CANDACE NEWBY AGAINST DEFENDANTS BANK OF AMERICA CORPORATION, A DELAWARE CORPORATION AS SUCCESSOR IN INTEREST TO COUNTRYWIDE FINANCIAL CORPORATION, MKM ABSTRACT SERVICES, COLDWELL BANKERS BEACH WEST, THOMAS TRIPODI, SAGE CREDIT COMPANY, INC. A/K/A SAGE CREDIT COMPANY, LLC D/B/A DCG HOME LOANS, INC., COUNTRYWIDE FINANCIAL CORPORATION, A DELAWARE CORPORATION, RMV APPRAISALS, ANTHONY BENANTI, COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC., A NEW YORK COMPANY D/B/A AMERICA'S WHOLESALE LENDER, DAVID CONARY, COUNTRYWIDE TAX SERVICES CORP., LANDSAFE, INC., LANDSAFE APPRAISAL SERVICES, INC., LANDSAFE CREDIT, INC., LANDSAFE FLOOD DETERMINATION, INC., SARA COUGHLIN, VIVIAN D. KAMATH, VK APPRAISALS, COUNTRYWIDE BANK, N.A. AND LANDSTAR TITLE AGENCY, INC. FOR UNJUST ENRICHMENT**

164.    Plaintiffs repeat and reiterate paragraphs numbered and/or designated "1" through "163" inclusive, with the same force and effect and as if fully stated herein at length.

165.    Defendants' deceptive scheme unjustly enriched Defendants, to the detriment of the Plaintiffs, by causing Defendants to receive excessive monetary payments from the Plaintiffs.

166.    Specifically, Plaintiffs have been injured in their business or property in a variety of ways, including the following: Plaintiffs were steered into loans whose complex terms have been misrepresented or inadequately disclosed to them suffer injury in that they take on financial burdens that they would not otherwise have taken on and suffer destructive impact on their financial well-being of having to make monthly payments on a property not truly worth the value indicated by the Defendant that were difficult for them to afford, sometimes leading to significant prepayment penalties when they seek to refinance their mortgages at a more favorable rate, increases in the principal owed under certain types of loans, risks defaulting on their loans, losing their homes, destroying their credit, or financial ruin. Borrowers who experience unanticipated, dramatic rate increases, as in the case of adjustable rate mortgages that have a short fixed-rate period, or in the case of PayOption ARM loans, where the borrower's minimum monthly payment inevitably causes the loan to "recast" to a significantly higher monthly payment based on the negative amortization of the loan, suffer harm from the unexpected and onerous burdens created by their suddenly having to make a monthly payment in amounts that greatly exceed what they committed to and can afford. The Plaintiffs as borrowers are also injured when, as a result of Defendants egregious and fraudulent acts, borrowers purchased a property for over Six Hundred Seventy-Seven Thousand ($677,000.00) more than the property was actually valued. Additionally, the Plaintiffs as borrowers who are charged inflated loan costs and other fees suffer injury in out-of-pocket costs over what they should have paid. When Plaintiffs obtained and/or refinanced from more traditional loans or take riskier loans than they otherwise could have obtained elsewhere, in the false belief that they are obtaining a loan on favorable terms, were injured by having to pay the difference between the fees and interest rates charged by Countrywide and those another lender would have charged.

167.    In addition to being injured in the manner described above, Plaintiffs have further and/or continues to be injured when on or about February 20, 2007 Plaintiff refinanced the One Million Six Hundred Thousand ($1,600,000.00) dollars mortgage and continues to make timely monthly payments on the refinanced mortgage.

168.    Specifically, Plaintiffs were and/or are being injured when: (a) within the first three months of paying the One Million Six Hundred Thousand ($1,600,000.00) dollars mortgage, Plaintiffs paid to Defendants a total amount of Twenty-Five Thousand Four Hundred Ninety-Seven and 21/100 ($25,497.21) dollars in interest only payments; (b) in order to refinance the One Million Six Hundred Thousand ($1,600,000.00) dollars mortgage, Plaintiffs were forced to pay Seven Hundred Sixteen Thousand ($716,000.00) dollars to reduce the principal balance of said mortgage; (c) Defendants knowingly and intentionally utilized the grossly inaccurate and fraudulent appraisal conducted by Defendants Benanti and RMV, dated August 22, 2006 that misrepresented the true value of the Lido Beach Premises by Six Hundred Seventy-Seven Thousand ($677,000.00) when Plaintiffs sought to refinance the One Million Six Hundred Thousand ($1,600,000.00) dollar mortgage; (d) from March 1, 2007 to January 1, 2012, Plaintiffs made their timely monthly mortgage payments of Six Thousand ($6000.00) dollars to Defendants on their refinanced mortgage for the past Fifty-Eight (58) months for a total amount of mortgage payments of Three Hundred Forty-Eight Thousand ($348,000.00) dollars; and (e) after January 1, 2012, Defendants will continue to be unjustly enriched when Plaintiffs, whose adjustable rate mortgage will change on March 1, 2012, continue to make their monthly payments.

169.    Based on the grossly inaccurate and fraudulent appraisal that misrepresented the true value of Plaintiffs' Lido Beach Residence that was also negligently relied upon by

Defendants when Plaintiffs refinanced the One Million Six Hundred Thousand ($1,600,000.00) dollars mortgage, in addition to being injured financially by Six Hundred Seventy-Seven Thousand ($677,000.00) dollars for the fraudulent appraisal, Plaintiffs were further injured financially with out of pocket costs associated with paying the original mortgage and the refinance mortgage in the amount of One Million Eighty-Nine Thousand Four Hundred Ninety-Seven and 21/100 ($1,089,497.21) dollars, for a total financial injury amount of One Million Seven Hundred Sixty-Six Thousand Four Hundred Ninety-Seven and 21/100 ($1,766,497.21) dollars as of January 1, 2012, but will continue to increase each month thereafter.

170. Defendants' retention of funds paid by Plaintiffs violates the fundamental principles of justice, equity, and good conscience.

171. Plaintiffs reserve their rights under applicable Federal and State laws and rules of procedure to amend this complaint accordingly to include additional parties that were and/or have been unjustly enriched by Defendants' fraudulent acts against Plaintiffs and to update the amount of damages Plaintiffs suffered as a result of Defendants' fraudulent acts in this action.

### PRAYER FOR RELIEF

172. WHEREFORE, Plaintiffs demand judgment in their favor and against the Defendants as follows:

        a. On the First Cause of Action, Judgment against all Defendants for misrepresentation and omission;

        b. On the Second Cause of Action, Judgment against all Defendants for negligent misrepresentation and omission;

        c. On the Third Cause of Action, Judgment against all Defendants for appraisal fraud;

        d. On the Fourth Cause of Action, Judgment against Defendants Bank of America Corporation, a Delaware Corporation As Successor In Interest To

Countrywide Financial Corporation, Countrywide Financial Corporation, a
Delaware Corporation, Countrywide Home Loans, Inc., a New York
Company D/B/A America's Wholesale Lender, Countrywide Tax Services
Corp., Landsafe, Inc., Landsafe Appraisal Services, Inc., Landsafe Credit,
Inc., Landsafe Flood Determination, Inc., Countrywide Bank, N.A. and
Landstar Title Agency, Inc. for violating the Racketeer Influenced &
Corrupt Organizations Act ("RICO") 18 USC §§ 1341 and 1343;

c.      On the Fourth Cause of Action, Count I, Judgment against Defendants
Bank of America Corporation, a Delaware Corporation As Successor In
Interest To Countrywide Financial Corporation, Countrywide Financial
Corporation, a Delaware Corporation, Countrywide Home Loans, Inc., a
New York Company D/B/A America's Wholesale Lender, Countrywide
Tax Services Corp., Landsafe, Inc., Landsafe Appraisal Services, Inc.,
Landsafe Credit, Inc., Landsafe Flood Determination, Inc., Countrywide
Bank, N.A. and Landstar Title Agency, Inc. for violating the Racketeer
Influenced & Corrupt Organizations Act ("RICO") 18 USC § 1962 (c);

f.      On the Fourth Cause of Action, Count II, Judgment against Defendants
Bank of America Corporation, a Delaware Corporation As Successor In
Interest To Countrywide Financial Corporation, Countrywide Financial
Corporation, a Delaware Corporation, Countrywide Home Loans, Inc., a
New York Company D/B/A America's Wholesale Lender, Countrywide
Tax Services Corp., Landsafe, Inc., Landsafe Appraisal Services, Inc.,
Landsafe Credit, Inc., Landsafe Flood Determination, Inc., Countrywide
Bank, N.A. and Landstar Title Agency, Inc. for violating the Racketeer
Influenced & Corrupt Organizations Act ("RICO") 18 USC § 1962(d) by
conspiring to violate 18 USC § 1962(c);

g.      On the Fourth Cause of Action, Count III, Judgment against Defendants
Bank of America Corporation, a Delaware Corporation As Successor In
Interest To Countrywide Financial Corporation, Countrywide Financial
Corporation, a Delaware Corporation, Countrywide Home Loans, Inc., a
New York Company D/B/A America's Wholesale Lender, Countrywide

        Tax Services Corp., Landsafe, Inc., Landsafe Appraisal Services, Inc., Landsafe Credit, Inc., Landsafe Flood Determination, Inc., Countrywide Bank, N.A. and Landstar Title Agency, Inc. for violating the Racketeer Influenced & Corrupt Organizations Act ("RICO") 18 USC § 2 by seeking to and aiding and abetting in the violation of 18 USC § 1962 (C);

h.      On the Fifth Cause of Action, Judgment against all Defendants for Unjust Enrichment;

i.      An award of treble the amount of damages suffered by Plaintiffs as proven at trial plus interest and attorneys' fees and expenses pursuant to 18 U.S.C. 1962 (c) and (d);

j.      Ordering Defendants to disgorge the payments and profits they wrongfully obtained at the expense of Plaintiffs; and

k.      Ordering that restitution be made to Plaintiffs for Defendants' unjust enrichment in the amount of $1,766,497.21 as of January 1, 2012, plus interest;

l.      Ordering that an accounting be made by Defendants of their wrongfully obtained payments and profits;

m.     Costs of this action, including reasonable attorneys fees and expenses; and

n.     Any such other and further relief as this Court deems just and proper.

**JURY DEMAND**

173.    Plaintiff demands a trial by jury on all claims triable as a matter of right.

Dated: December 29, 2011           Respectfully Submitted,

                        IVAN E. YOUNG, ESQ.
                        Young Law Group, PLLC
                        80 Orville Drive, Suite 100
                        Bohemia, NY 11716
                        (631) 244-1434 - Office
                        (631) 589-0949 – Facsimile
                        *Attorney for Plaintiffs Hunter Newby;*
                        *Candace Newby*

## VERIFICATION

STATE OF NEW YORK)
COUNTY OF SUFFOLK)

     HUNTER NEWBY, being duly sworn, deposes and says:

     I am a plaintiff in this action and have read the annexed VERIFIED COMPLAINT and

know the contents thereof and the same are true to my knowledge, except those matters therein

which are stated to be alleged upon information and belief, and as to those matters, I believe

them to be true.

                              HUNTER NEWBY

STATE OF NEW YORK )
COUNTY OF SUFFOLK)

On the 29th day of December 2011, before me, the undersigned, a Notary Public in and for said
State, personally appeared HUNTER NEWBY personally known to me or proved to me on the
basis of satisfactory evidence to be the individual whose name is subscribed to the within
instrument and acknowledged to me that he/she executed same in his/her capacity, and that
his/her signature on the instrument, the individual, or the person upon behalf of which individual
acted, executed the instrument.

                                       Signature of Notary Public

## VERIFICATION

STATE OF NEW YORK)
COUNTY OF SUFFOLK)

CANDACE NEWBY, being duly sworn, deposes and says:

I am a plaintiff in this action and have read the annexed VERIFIED COMPLAINT and

know the contents thereof and the same are true to my knowledge, except those matters therein

which are stated to be alleged upon information and belief, and as to those matters, I believe

them to be true.

CANDACE NEWBY

STATE OF NEW YORK )
COUNTY OF SUFFOLK)

On the 29th day of December 2011, before me, the undersigned, a Notary Public in and for said
State, personally appeared CANDACE NEWBY personally known to me or proved to me on the
basis of satisfactory evidence to be the individual whose name is subscribed to the within
instrument and acknowledged to me that he/she executed same in his/her capacity, and that
his/her signature on the instrument, the individual, or the person upon behalf of which individual
acted, executed the instrument.

IVAN E. YOUNG
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN SUFFOLK COUNTY
REG. #02YO6163108
COMM. EXP. MARCH 10, 20_15

Signature of Notary Public

01/10/2012   1:40PM

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

| | |
|---|---|
| HUNTER NEWBY and CANDACE NEWBY,<br>Plaintiffs, | Index No. 11-018112 |
| -against- | VERIFIED COMPLAINT |
| BANK OF AMERICA CORPORATION, a Delaware corporation, as successor in interest to COUNTRYWIDE FINANCIAL CORPORATION; COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation, BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP, AND AS SUCCESSOR BY MERGER TO COUNTRYWIDE BANK, F.S.B. F/K/A COUNTRYWIDE BANK, N.A.; COUNTRYWIDE HOME LOANS, INC., a New York corporation, d/b/a AMERICA'S WHOLESALE LENDER; DAVID CONARY, in his official capacity AS AN AGENT OF COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE TAX SERVICES CORP.; LANDSAFE, INC., a Delaware corporation; LANDSAFE APPRAISAL SERVICES, INC., a California corporation; LANDSAFE CREDIT, INC., a California corporation; LANDSAFE FLOOD DETERMINATION, INC., a California corporation, COLDWELL BANKERS BEACH WEST REALTY; THOMAS TRIPODI, Individually; SAGE CREDIT COMPANY, INC a/k/a SAGE CREDIT COMPANY, LLC, d/b/a DCG HOME LOANS, INC; SARA COUGHLIN, Individually and in her official capacity AS AN AGENT OF SAGE CREDIT COMPANY; RMV APPRAISALS; ANTHONY BENANTI, Individually and in his official capacity AS AN APPRAISER WITH RMV APPRAISALS; V.K. APPRAISAL SERVICES, INC.; V.K. APPRAISAL SERVICES, Inc.; VIVIAN D. KAMATH, individually and in his/her official capacity AS AN APPRAISER WITH V.K. APPRAISAL SERVICES, INC.; AURORA BANK, F.S.B a/k/a AURORA MSF LEHMAN; MKM ABSTRACT SERVICES, INC., LANDSTAR TITLE AGENCY, INC.,<br>Defendants. | Hon. _____ |

---

### VERIFIED COMPLAINT

---

IVAN E. YOUNG, ESQ.
*Attorney for Plaintiffs Hunter Newby & Candace Newby*
80 Orville Drive, Suite 100
Bohemia, NY 11716
(631) 244-1433
(631) 589-0949 (fax)

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the Courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed documents are not frivolous.

To:
Attorneys for

IVAN E. YOUNG, ESQ.

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK  )
                    ) ss.:
COUNTY OF NASSAU  )

     **ANNA M. LEDEE**, being duly sworn, deposes and says, that deponent is not a party to the action, is over 18 years of age and resides at Nassau County, New York. That on the 8th day of February, 2012, deponent served the within **NOTICE REMOVAL** upon the following:

Ivan E. Young, Esq.
Young Law Group, PLLC
Attorneys for Plaintiffs
80 Orville Drive, Suite 100
Bohemia, New York 11716
(631) 244-1434

Toniann Mascia, Esq.
Gallagher, Walker, Bianco &
Plastaras, LLP
Attorneys for Defendants
MKM Abstract Services, Inc.
98 Willis Avenue
Mineola, New York 11501
(516) 248-2002

Bank of America Corporation, a
Delaware Corporation as Successor
in Interest to Countrywide Financial
Corporation
100 N. Tryon Street
Charlotte, North Carolina 28255

Sage Credit Company, Inc.
a/k/a Sage Credit Company, LLC
d/b/a DCG Home Loans, Inc.
8001 Irvine Center Drive, #200
Irvine, California 92618

RMV Appraisals
5507 Avenue N, Suite 3
Brooklyn, New York 11234

Anthony Benanti, Appraiser for
RMV Appraisals
5507 Avenue N, Suite 3
Brooklyn, New York 11234

Countrywide Home Loans, Inc.,
a New York company d/b/a
America's Wholesale Lender
4500 Park Granada Blvd.
Calabasas, California 91302

Countrywide Tax Services Corp.
4500 Park Granada Blvd.
Calabasas, California 91302

Landsafe Appraisal Services, Inc., a
California corporation
4500 Park Granada Blvd.
Calabasas, California 91302

Countrywide Financial Corporation
a Delaware corporation
4500 Park Granada Blvd.
Calabasas, California 91302

Anthony Benanti, Individually
1733 East 4th Street, Apt. 3F
Brooklyn, New York 11223

Countrywide Financial Corporation
1 Bryant Park
New York, New York 10036

David Conary, Agent of
Countrywide Home Loans, Inc.,
a New York company d/b/a
America's Wholesale Lender
4500 Park Granada Blvd.
Calabasas, California 91302

Landsafe, Inc.
a Delaware corporation
6400 Legacy Drive
Plano, Texas 75024

Landsafe Credit, Inc.
a California corporation
4500 Park Granada Blvd.
Calabasas, California 91302

Landsafe Flood Determination, Inc.
a California corporation
4500 Park Granada Blvd.
Calabasas, California 91302

Sarah Coughlin, Agent of
Sage Credit Company, Inc.
a/k/a Sage Credit Company, LLC
d/b/a DCG Home Loans, Inc.
8001 Irvine Center Drive, #200
Irvine, California 92618

Vivian D. Kamath, Appraiser for
VK Appraisal Services
677 Little East Neck Road
West Babylon, New York 11704

Bank of America, N.A., as
Successor by merger to BAC Home
Loans Servicing, LP f/k/a
Countrywide Home Loans
Servicing, LP, and as successor by
merger to Countrywide Bank,
F.S.B. f/k/a Countrywide Bank,
N.A.
400 National Way
Simi Valley, California 93065

Sarah Coughlin, Individually
15-1472 15th Avenue
Keaau, Hawaii 96749

Vivian D. Kamath, Appraiser for
VK Appraisal Services
P.O. Box 1478
West Babylon, New York 11704

Vivian D. Kamath, Individually
677 Little East Neck Road
West Babylon, New York 11704

Landstar Title Agency, Inc.
4500 Park Granada Blvd.
Calabasas, California 91302

Aurora Bank, F.S.B.
a/k/a Aurora MSF Lehman
*No Address Provided*

the attorney(s) for the respective parties in this action, at the above address(es) designated by said attorney(s) for that purpose by depositing same enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office within the State of New York.

ANNA M. LEDEE

Sworn to before me this
8th day of February, 2012.

Notary Public

PATRICIA A. DAMATO
Notary Public, State of New York
No. 01DA5022281
Qualified in Suffolk County
Commission Expires January 3, 20 14