D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
HUNTER NEWBY and CANDACE NEWBY,

                Plaintiffs,

                **OPINION AND ORDER**
      -against-              12-CV-614 (SJF)(AKT)

BANK OF AMERICA CORPORATION, a Delaware
corporation, as successor in interest to COUNTRYWIDE
FINANCIAL CORPORATION, et al.,

                Defendants.
----------------------------------------------------------------X

FEUERSTEIN, J.

On December 29, 2011, Hunter and Candace Newby ("plaintiffs") commenced this action in the Supreme Court of the State of New York, County of Nassau, against: (1) Bank of American Corporation, as successor-in-interest to Countrywide Financial Corporation, and various affiliates of Bank of America and Countrywide (collectively, "BOA");[1] (2) Coldwell Bankers Beach West Realty and Thomas Tripodi (together, "Coldwell"); (3) RMV Appraisals and Anthony Benanti (together, "RMV"); and (4) V.K. Appraisal Services, Inc. and Vivian D. Kamath (together, "VK").[2] Plaintiffs assert claims arising out of their purchase of a residence in Lido Beach, New York, including: (1) misrepresentation; (2) negligent misrepresentation; (3) violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.

---

[1] The affiliates include Bank of America Corporation, Countrywide Financial Corporation, Bank of America, N.A., Countrywide Home Loans, Inc., BAC Tax Services Corporation f/k/a Countrywide Tax Services Corporation (incorrectly sued herein as "Countrywide Tax Services Corporation"), Landsafe, Inc., Landsafe Appraisal Services, Inc., Landsafe Credit, Inc., and Landsafe Flood Determination, Inc.

[2] On September 19, 2012, plaintiffs voluntarily dismissed MKM Abstract Services, Inc. from the case. [Docket Entry No. 40].

1

§§ 1961, et. seq.;³ and (4) unjust enrichment. The action was removed to this Court on February 8, 2012. [Docket Entry No. 1] ("Compl.").

Now before the Court are the motions of BOA, [Docket Entry No. 31], Coldwell, [Docket Entry No. 25], and VK, [Docket Entry No. 34], to dismiss plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motions are GRANTED.

I. Background

On September 22, 2006, plaintiffs sold their former residence for five hundred forty-nine thousand dollars ($549,000.00), Compl. at ¶ 53, and on September 27, 2006, purchased their current residence (the "Lido Beach residence") for one million six hundred thousand dollars ($1,600,000.00). Compl. at ¶ 54. Plaintiffs financed their purchase of the Lido Beach residence with a loan from BOA in the amount of one million four hundred forty dollars ($1,440,000.00), secured by two (2) mortgages on the property. Compl. at ¶¶ 59-62; BOA Memorandum of Law in Support of Motion to Dismiss [Docket Entry No. 32] ("BOA Memo.") at 1. The sellers of the Lido Beach residence (the "sellers") subsequently purchased a residence (the "Brennan Place residence") for one million seven hundred thousand dollars ($1,700,000.00). Compl. at ¶ 54. Tripodi, an employee of Coldwell, served as a broker in the sale of all three (3) residences. Compl. at ¶ 55. The exact nature of Coldwell's role in the transactions is in dispute, as discussed in further detail below. See infra III.B.

According to plaintiffs, two (2) appraisals conducted prior to their purchase of the Lido Beach residence determined that the fair market value of the property was no more than nine hundred twenty-three thousand dollars ($923,000.00). Compl. at ¶ 57. Because these appraisals

---

³ Plaintiffs' RICO claims are asserted against BOA only. See Compl. at ¶ 172.

would not justify the one million six hundred thousand dollar ($1,600,000.00) asking price, thereby jeopardizing the sellers' purchase of the Brennan Place residence, Tripodi hired Anthony Benanti ("Benanti"), an agent of RMV Appraisals, to perform a third appraisal (the "RMV appraisal"), which valued the Lido Beach residence at one million six hundred thousand dollars ($1,600,000.00). Compl. at ¶ 58. Before BOA provided the loan to plaintiffs for the purchase of the Lido Beach residence, VK reviewed the RMV appraisal for BOA (the "VK appraisal"). Compl. at ¶ 64.

In November 2006, after plaintiffs' mortgage payments had "unexpectedly ballooned," plaintiffs applied to BOA to refinance their loan. Compl. at ¶ 65. BOA performed an appraisal of the Lido Beach residence (the "Rowan appraisal") and concluded that "[o]verall, the appraised value at $1,600,000 appears high, but within the lender tolerances." Compl. at ¶ 66. On February 20, 2007, plaintiffs received a refinancing loan in the amount of seven hundred sixty-five thousand dollars ($765,000.00). Compl. at ¶ 67. Plaintiffs assert that the terms of the refinancing were "abhorrent and egregious," as plaintiffs intended to agree to a thirty-year fixed rate mortgage but instead were given a mortgage with a five-year fixed rate, interest only payment term, and a twenty-five-year adjustable rate term thereafter. Compl. at ¶¶ 68-69. On April 26, 2007, plaintiffs also obtained a Home Equity Line of Credit ("HELOC") from BOA in the amount of two hundred thousand dollars ($200,000.00), secured by a mortgage on the Lido Beach residence. Compl. at ¶ 70.

Plaintiffs "became aware that the value of the[] Lido Beach [r]esidence may have been originally and consistently fraudulently inflated by the [d]efendants . . . when [d]efendant Countrywide terminated the [p]laintiffs' ability to draft funds from [p]laintiffs' HELOC second mortgage on January 25, 2008," having determined that the value of the Lido Beach residence at

the time was eight hundred ninety thousand five hundred forty-five dollars ($890,545.00). Compl. at ¶ 72.

II.   Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 678 (quoting Twombly, 550 U.S. at 557).

The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011); see also Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

"The complaint is deemed to include any written instrument attached to it as an exhibit [and] any statements or documents incorporated in it by reference." Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (citations and internal quotation marks omitted). The Court may also consider documents "upon which [the complaint] solely relies and which [are] integral to the complaint," regardless of whether they are attached or incorporated by

reference. Id. Plaintiffs have submitted affidavits from plaintiffs in support of their opposition to Coldwell's motion. Because these affidavits merely augment the allegations in the complaint and do not alter the Court's conclusions, as discussed in further detail below, they have been considered by the Court. However, plaintiffs have also submitted an appraisal of the Lido Beach residence, apparently conducted by an appraiser retained by plaintiffs' counsel. See [Docket Entry No. 30] Ex. C. There is no basis for the Court to consider the appraisal at the motion to dismiss stage, and the Court declines to convert the pending motions into motions for summary judgment.[4]

III. Analysis

As an initial matter, plaintiffs argument that all three (3) "motion[s] to dismiss should be denied as being procedurally premature because no pre-trial discovery has been done as of yet in this action" is without merit. Plaintiffs' Memorandum of Law in Opposition to BOA's Motion to Dismiss [Docket Entry No. 30] ("Pl. BOA Resp.") at 1. "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief <u>without</u> resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." Global Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 155 (2d Cir. 2006). Plaintiffs are thus required to allege a plausible claim to relief <u>before</u> engaging in discovery. See Iqbal, 556

---

[4] When a party submits matters outside the pleadings in connection with a motion to dismiss pursuant to Rule 12(b)(6), a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment and afford all parties the opportunity to present supporting material. Friedl v. City of N.Y., 210 F.3d 79, 83 (2d Cir. 2000). "This conversion requirement is strictly enforced whenever there is a legitimate possibility that the district court relied on material outside the complaint in ruling on the motion." Id. (internal quotation marks omitted).

5

U.S. at 678-79 ("[T]he doors of discovery [are not unlocked] for a plaintiff armed with nothing more than conclusions.").[5]

    A.  BOA and VK

        1.  Fraud[6]

"'Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff.'" Solow v. Citigroup, Inc., No. 12-CV-2499, 2013 WL 149902, at *2 (E.D.N.Y. Jan. 15, 2013) (quoting Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001)). To satisfy the requirement of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") that fraud claims be "state[d] with particularity," plaintiffs must also "'(1) specify the statements that the plaintiff[s] contend[] were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Anschutz Corp. v. Merrill Lynch & Co., Inc., 690 F.3d 98, 108 (2d Cir. 2012) (quoting Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004)). The particularity requirement "serves to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the

---

[5] Plaintiffs' confusion is further illustrated by their incorrect assertion that defendants are required to submit evidence in support of a motion to dismiss pursuant to Rule 12(b)(6). See Pl. BOA Resp. at 4 ("Defendants' motion to dismiss must be dismissed because it is defective in that the denial of Plaintiffs' claim was made by Plaintiffs' counsel and not by a person with personal knowledge to dispute such claims. The absence of a sworn affidavit from an employee and/or officer of Defendants Bank and its subsidiaries that have personal knowledge to dispute Plaintiffs' claim, the Court must deem Defendants' motion to dismiss defective and deny their motion in its entirety.").

[6] There is no independent cause of action for "appraisal fraud." Therefore, plaintiffs' allegations of misrepresentations related to the various appraisals and appraisal reviews conducted by defendants are reviewed in the same manner as any other common law fraud claim.

6

institution of a strike suit." Rombach, 355 F.3d at 171 (internal quotation marks omitted). Additionally, "a plaintiff must allege facts that give rise to a strong inference of fraudulent intent." Eaves v. Designs for Fin., Inc., 785 F. Supp.2d 229, 247 (S.D.N.Y. 2011) (internal quotation marks omitted). A strong inference of fraudulent intent may be established by alleging facts that (1) show that the defendants had both motive and opportunity to commit fraud, or (2) constitute strong circumstantial evidence of conscious misbehavior or recklessness. Id. (citing Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

"The long-established rule in New York is that statements concerning the value of real property are generally not actionable under a theory of fraud or fraudulent inducement" because: (1) "representations as to value alone are generally matters of opinion upon which no detrimental reliance can occur"; and (2) "the doctrine of caveat emptor applies to real estate transactions such that a buyer has a duty to satisfy himself or herself of the quality of a bargained purchase price without trusting a seller." Simms v. Biondo, 816 F. Supp. 814, 819-20 (E.D.N.Y. 1993) (citations omitted). See also M& T Mortg. Corp. v. White, 736 F. Supp.2d 538, 558 (E.D.N.Y. 2010) ("[The doctrine of caveat emptor] imposes a duty on buyers of real estate to independently ascertain or verify the value of the property at issue.") (citing London v. Courduff, 529 N.Y.S.2d 874 (App. Div. 1988)); Barkley v. United Homes, LLC, No. 04-CV-875, 2012 WL 2357295, at *5 (E.D.N.Y. June 20, 2012) ("[I]t is settled law in New York that the seller of real property is under no duty to speak when the parties deal at arm's length and the mere silence of the seller, without some act or conduct which deceived the purchaser, does not amount to a concealment that is actionable as a fraud.") (quoting M&T Mortg., 736 F. Supp.2d at 558) (internal quotation marks and alterations omitted).

7

"Courts have found exceptions to the rule of caveat emptor, however, where sellers concealed facts or induced buyers to refrain from making independent inquiries into the terms of a real estate deal," including where "defendants deliberately steered plaintiffs to other members of the conspiracy in order to prevent their discovery of the true value of the properties at issue." Barkley, 2012 WL 2357295, at *5 (citing Banks v. Consumer Home Mortg., Inc., No. 01-CV-8508, 2003 WL 21251584, at *9 (E.D.N.Y. Mar. 28, 2003)); see also Platzman v. Morris, 724 N.Y.S.2d 502 (App. Div. 2001) ("To maintain a cause of action to recover damages for active concealment in the context of a fraudulent nondisclosure, the plaintiffs must show, in effect, that the seller thwarted the plaintiffs' effort to fulfill their responsibilities fixed by the doctrine of caveat emptor."). Additionally, the doctrine of caveat emptor may not apply "where plaintiffs are 'vulnerable, unsophisticated, first-time home buyers hoodwinked by a sophisticated, layered, business operation involving multiple individuals and entities,'" as the transactions may not be at arm's length. Barkley, 2012 WL 2357295, at *5 (quoting M&T Mortg., 736 F. Supp.2d at 559).

The gist of plaintiffs' claim against BOA is that the RMV appraisal was inflated and that BOA's failure to reveal as much to plaintiffs through the course of the VK and Rowan appraisals during plaintiffs' mortgage approval process and later refinancing was fraudulent. According to plaintiffs, BOA "played a role in causing harm and damage to [p]laintiffs by not following [the Uniform Standards of Professional Appraisal Practice ("USPAP")] and/or underwriting guidelines where the over-inflated appraisal could have been discovered and/or remedied that would have prevented [BOA] from originating a loan and [p]laintiffs from purchasing a home that was over-valued from the onset." Pl. BOA Resp. at 5-6. Plaintiffs further assert that "[t]he failure of [d]efendants . . . to also have the two previous appraisals that stated [p]laintiffs' property was worth only $923,000.00 independently reviewed could lead this court to reasonable

[sic] question [p]laintiff [sic] inaction and total disregard of said appraisals that can lead to a reasonable inference that the [d]efendants may have been in cahoots with each other to mislead [p]laintiffs and profit on their purchase of a home that was over-valued." Pl. BOA Resp. at 5-6.

Plaintiffs have failed to offer any legal or factual basis for holding BOA liable for alleged deficiencies in appraisals conducted by RMV and VK. Moreover, plaintiffs' allegations fail to identify any misrepresentation made by BOA to plaintiffs with the requisite particularity. Plaintiffs' allegation that BOA's appraisal review process was deficient is irrelevant absent an identification of a statement actually made by BOA to plaintiffs that was itself fraudulent or that omitted information that BOA was required to disclose. BOA's willingness to lend money to plaintiffs based on their own valuation of the property does not itself provide a basis for a fraud claim. Plaintiffs merely allege, in conclusory fashion, that BOA "falsely, misleadingly and repeatedly misrepresented to [p]laintiffs the true value of the Lido Beach [r]esidence," Compl. at ¶ 74, and that "the inflated value of [p]laintiffs' home was a material misrepresentation of the fact because it misled [p]laintiffs into believing the home they were to purchase was worth more than it really was." Pl. BOA Resp. at 10. These conclusory allegations are not sufficient to sustain a claim of fraud under Rule 9(b).

Moreover, even if BOA did make a representation to plaintiffs regarding the value of the Lido Beach residence, plaintiffs have not alleged facts that would make their reliance on BOA's representation reasonable. Under the doctrine of caveat emptor, a representation by BOA regarding the value of the property would have been an opinion, not a representation of fact, and plaintiffs had an independent duty to form their own opinion. Because plaintiffs have not alleged facts indicating that BOA prevented them from performing their own investigation into the value of the property, BOA's opinion cannot form the basis for a fraud claim. See Weaver v. IndyMac

9

Fed. Bank, FSB, No. 09-CV-5091, 2011 WL 4526404, at *4 (S.D.N.Y. Sept. 29, 2011) (dismissing claim for appraisal fraud where the "[p]laintiff fail[ed] to sufficiently state that [d]efendant knew the appraisal was inflated, that she intended to defraud [p]laintiff, and that [p]laintiff relied on [d]efendant's appraisal in agreeing to the allegedly inflated purchase price").

Lastly, the fact that the RMV and Rowan appraisals placed a higher value on the property than previous appraisals does not give rise to an inference of fraudulent intent on behalf of BOA. The value of a property is affected by a variety of factors, and a change in opinion on the value of the property over time alone does not "constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields, 25 F.3d at 1128.

Plaintiffs also appear to be asserting a fraud claim with respect to the terms of their mortgage and subsequent refinancing. According to plaintiffs, they were "offered [] a first mortgage with a 'Teaser Rate' which was not properly disclosed and is prohibited by the New York State Banking Department. Specifically, [p]laintiffs were offered a Negative Amortization Option Adjustable Rate Mortgage . . . where [p]laintiffs' first mortgage payment due on or about December 1, 2006 was at 1.5% interest rate and [p]laintiffs' second payment due on or about January 1, 2007 unexpectedly ballooned to 8.25%." Compl. at ¶ 63. With respect to their refinancing loan, plaintiffs allege as follows:

> The first refinance mortgage position . . . was yet again another deceitful loan and not consistent with terms that the Plaintiffs had originally requested. Specifically, instead of being a thirty (30) year fixed rate mortgage, the Plaintiffs were duped into a [sic] signing a thirty (30) year mortgage that only had a fixed rate term of five (5) years, with a ten (10) year interest only payment period in which five (5) years after the execution date of the February 20, 2007, the loan then transitions into another adjustable rate mortgage for the remaining twenty-five (25) years of the loan amortization.

Compl. at ¶ 68.

10

BOA has submitted plaintiffs' Adjustable Rate Note, an Adjustable Rate Rider to the Note, and a Truth In Lending Disclosure Statement, signed by both plaintiffs.[7] See Declaration of Suzanne M. Berger [Docket Entry No. 31-1] ("Berger Decl.") at Exs. 3-5. These documents disclose the terms of plaintiffs' loan, including the fact that the interest rate was adjustable. Plaintiffs have failed to specify what is alleged to be fraudulent about these documents and have not otherwise identified any related misrepresentations made by BOA. Likewise, plaintiffs' conclusory allegation that they were "duped" into signing the refinancing loan does not meet the particularity requirement of Rule 9(b); plaintiffs must specify the allegedly fraudulent statements and the circumstances in which they were made. For the foregoing reasons, plaintiffs' fraud claim against BOA is dismissed.

With respect to VK, plaintiffs have failed to allege facts that would justify their reliance on any representation by VK regarding the value of the Lido Beach residence. Plaintiffs merely allege that VK conducted a review for BOA of the RMV appraisal in connection with BOA's mortgage approval process. Plaintiffs have failed to offer any legal support for the proposition that a home buyer may reasonably rely on an appraisal review conducted by the mortgage lender, and such a result would contravene the well-established doctrine of caveat emptor. See Phillips v. Better Homes Depot, Inc., No. 02-CV-1168, 2003 WL 25867736, at *26 (E.D.N.Y. Nov. 12, 2003) ("[A]n appraiser is generally not liable to the purchaser in contract or negligence because the only duty an appraiser owes is to the mortgage lender."). Plaintiffs focus their opposition to VK's motion to dismiss on alleged deficiencies in the manner in which the appraisal review was conducted. Plaintiffs' Memorandum of Law in Opposition to VK Motion to Dismiss [Docket

---

[7] The loan documents are integral to the complaint and thus may be considered by the Court on a motion to dismiss. See Audiotext, 62 F.3d at 72. Furthermore, plaintiffs have not objected to the Court's consideration of these documents.

Entry No. 34-5] ("Pl. VK Resp.") at 6-7. However, such allegations are irrelevant if plaintiffs' reliance on the VK appraisal review was not reasonable. Accordingly, plaintiff's fraud claims against VK are dismissed.

        2.      Negligent Misrepresentation

"[T]he law of negligent misrepresentation requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on [an alleged misrepresentation] justified." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 788 (2d Cir. 2003). To determine whether such a special relationship exists, the Court must consider whether: (1) the person making the representation held or appeared to hold unique or special expertise; (2) a special relationship of trust or confidence existed between the parties; and (3) the speaker was aware of the use to which the information would be put and supplied it for that purpose. Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 103 (2d Cir. 2001); Kimmell v. Schaefer, 89 N.Y.2d 257, 264 (1996). "[A] sparsely pled special relationship of trust or confidence is not fatal to a claim for negligent misrepresentation where the complaint emphatically alleges the other two factors . . . ." Woori Bank v. RBS Sec., Inc., No. 12-CV-4254, 2012 WL 6703352, at *7 (S.D.N.Y. Dec. 27, 2012) (internal quotation marks omitted).

As discussed above, plaintiffs have failed to identify any misrepresentation or omission attributable to either BOA or VK. See, e.g., In re Merrill Lynch Auction Rate Sec. Litig., No. 09-MD-2030, 2011 WL 536437, at *12 (S.D.N.Y. Feb. 9, 2011) (noting that statements of opinion cannot form the basis for a claim of negligent misrepresentation); Eaves, 785 F. Supp.2d at 254-55 ("[W]here . . . the negligent misrepresentation claim is based on the same set of facts as those upon which a fraud claim is grounded, Rule 9(b) applies to the negligent misrepresentation claim as well."). Moreover, plaintiffs have not alleged, even "sparsely," a relationship of trust between

plaintiffs and BOA or VK that would justify plaintiffs in relying upon BOA's and VK's representations. See Chambers v. Exec. Mortg. Corp., 645 N.Y.S.2d 91, 93 (App. Div. 1996) (dismissing negligent misrepresentation claim brought my home seller against appraiser whose low valuation caused buyer's financing to fail "due to the lack of any duty owed" by the appraiser to the seller).

Accordingly, plaintiffs' negligent misrepresentation claims against VK and BOA are dismissed.

### 3. Unjust Enrichment

"Under New York law, for a plaintiff to prevail on a claim of unjust enrichment, he [or she] must establish (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir.2001). "The essence of such a claim is that one party has received money or a benefit at the expense of another." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks omitted). "The term 'unjust enrichment' does not signify a single well-defined cause of action. An action for unjust enrichment is a claim in equity that the result or effect of a failure to make restitution of or for benefits received under the circumstances give rise to a legal or equitable obligation to account for the benefits." Mitchell v. Faulkner, No. 10-CV-8173, 2013 WL 150254, at *7 (S.D.N.Y. Jan. 15, 2013).

BOA asserts that plaintiffs "cannot recover for unjust enrichment because there is a contract governing their relationship with [BOA]," BOA Memo. at 12, and VK argues that plaintiffs have failed to allege that VK was enriched at plaintiffs' expense since VK received compensation for its appraisal from BOA, not plaintiffs, VK Memorandum in Support of Motion

to Dismiss [Docket Entry No. 34-3] at 12. In response to these arguments, plaintiffs merely list the elements of an unjust enrichment claim and state that "[p]laintiffs . . . sufficiently pled how [d]efendants were unjustly enriched at their expense and to their detriment." Pl. BOA Resp. at 11; Plaintiffs' Opposition to VK's Motion to Dismiss [Docket Entry No. 34-5] at 9-10. This conclusory statement fails to address VK's and BOA's arguments, and the Court therefore deems plaintiffs to have abandoned these claims. See Williams v. Mirabal, No. 11-CV-366, 2013 WL 174187, at *2 (S.D.N.Y. Jan. 16, 2013) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (internal quotation marks omitted); see also Sorto-Romero v. Delta Int'l Machinery Corp., No. 05-CV-5172, 2007 WL 2816191, at *9 (E.D.N.Y. Sept. 24, 2007) (holding that "claim is abandoned by virtue of [the plaintiff's] failure to address it in his memorandum responding to Defendant's summary judgment motion.") (internal quotation marks and alterations omitted).

Accordingly, plaintiffs' unjust enrichment claims against VK and BOA are dismissed.

### 4. RICO

Plaintiffs allege that BOA participated in a racketeering enterprise that "steer[ed] as many borrowers as possible into inappropriate subprime loans." Compl. at ¶ 125. The RICO statute provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). A "person injured in his business or property by reason of a [RICO] violation" may assert a private cause of action for treble damages. 18 U.S.C. § 1964(c). "A plaintiff charging civil RICO violations must allege each of the claim's elements, including '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity,' as well as 'injury

to business or property as a result of the RICO violation.'" Terrell v. Eisner, 104 F. App'x 210, 212 (2d Cir. 2004) (quoting Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999)). "The requisite 'pattern . . . of racketeering activity' required by 18 U.S.C. § 1961(5) must consist of two or more predicate acts of 'racketeering,' as enumerated in 18 U.S.C. § 1961(1)." Id. at 212.

BOA argues that plaintiffs' RICO claims must be dismissed because, inter alia, plaintiffs have failed to adequately allege two (2) predicate acts of racketeering as required by 18 U.S.C. § 1961(5).[8] Plaintiffs allege that BOA committed mail and wire fraud by (1) having "placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service . . . including promotional materials, applications, agreements, manuals, and correspondence," and (2) having "transmitted and received by wire, matter and things, including but not limited to promotional materials, applications, agreements, manuals and correspondence and made or caused to be made false statements over the telephone, electronic mail, and internet." Compl. at ¶¶ 131-32.

These general and conclusory allegations fail to satisfy Rule 9(b)'s requirement that predicate acts of fraud be pleaded with particularity. "[A]llegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993); see also, e.g., Physicians Mut. Ins. Co. v. Greystone Servicing Corp., No. 07-CV-10490, 2009 WL 855648, at *9 (S.D.N.Y. March 25, 2009) ("[P]laintiffs' RICO claims also fail because the alleged predicate acts are pleaded too vaguely to satisfy Rule 9(b)'s particularity requirements."). Because plaintiffs fail to provide any specific allegations of fraud

---

[8] Instead of addressing BOA's various arguments for dismissing the RICO claims, plaintiffs have argued only that their RICO claims are not barred by the statute of limitations.

on behalf of the alleged enterprise, they have failed to plead the existence of a pattern of racketeering.

Plaintiffs also assert a claim pursuant to 18 U.S.C. § 1962(d), which provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Since plaintiffs have failed to allege a substantive violation of section 1962(c), they cannot maintain a claim under 18 U.S.C. § 1962(d) for conspiracy to commit such a violation. See, e.g., Watkins v. Smith, No. 12-CV-4635, 2012 WL 5868395, at *6 (S.D.N.Y. Nov. 19, 2012) ("In light of the complaint's failure to state a claim for a substantive violation of 18 U.S.C. § 1962(a)-(c), the plaintiff's conspiracy claim under 28 U.S.C. § 1962(d) must be dismissed as well."). Accordingly, plaintiffs' RICO claims against BOA are dismissed with prejudice.[9]

### B.    Coldwell

Plaintiffs' claims against Coldwell suffer from the same deficiencies as those asserted against BOA and VK: Coldwell's representations as to their opinion of the value of the Lido Beach residence cannot form the basis for a fraud claim; no relationship existed between plaintiffs and Coldwell to support a negligent misrepresentation claim; and plaintiffs have not alleged that Coldwell was enriched at plaintiffs' expense. Moreover, plaintiffs have not identified any specific misrepresentation or omission by Coldwell. Plaintiffs merely state that

---

[9] "[L]eave to amend may be denied when such amendment would be futile." Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC, No. 11-CV-3327, 2013 WL 417406, at *21 (E.D.N.Y. Feb. 4, 2013). Plaintiffs' RICO allegations are merely copied from a class action complaint filed in California, see In re Countrywide Fin. Corp. Mortg. Mktg., 601 F. Supp.2d 1201 (S.D. Cal. 2009), and plaintiffs have made no attempt to relate these allegations to plaintiffs' particular experience in this case. Plaintiffs also failed to address the various deficiencies in their RICO claims identified by BOA. See BOA Memo. at 10-21. Plaintiffs have thus failed to provide any basis for the Court to conclude that an attempt to replead these claims could be successful.

16

"courts have concluded that factual allegations that a defendant violated or disregarded the appraisal standards are sufficient to maintain a claim for misrepresentation and omissions, and requires [sic] no further factual amplification." Plaintiffs' Memorandum of Law in Opposition to Coldwell's Motion to Dismiss [Docket Entry No. 25-7] ("Pl. Coldwell Resp.") at 10. However, Coldwell is not alleged to have conducted any of the appraisals at issue.

Plaintiffs attempt to distinguish their claims against Coldwell from those asserted against BOA and VK by alleging that Coldwell acted as plaintiffs' agent in their purchase of the Lido Beach residence. Coldwell asserts that it merely "operated as the listing agent in connection with the underlying [Lido Beach residence] transaction," Coldwell Memorandum of Law in Support of Motion to Dismiss [Docket Entry No. 25-6] ("Coldwell Memo.") at 12, and has submitted a real estate agency disclosure form, signed by plaintiffs, indicating that Coldwell disclosed to plaintiffs that it was the agent for the sellers of the Lido Beach residence, not for plaintiffs. Affidavit of Scott E. Kossove in Support of Coldwell Motion to Dismiss [Docket Entry No. 25-1] Ex. C (the "disclosure form"). Plaintiffs object to the Court's consideration of the disclosure form on the ground that it was not incorporated in the complaint and argue that "the signature page of the real estate broker's agreement and [d]efendants' assertion that they did not represent [p]laintiffs as the buyer in the Lido Beach property transaction creates an issue of fact." Pl. Coldwell Resp. at 5. It is not necessary for the Court to consider the disclosure form, as plaintiffs' allegations regarding Tripodi's role in the transaction do not alter the Court's conclusion that plaintiffs have failed to state any plausible claim for relief against Coldwell.

In support of their assertion that Coldwell was acting as their agent in the transaction, plaintiffs have submitted a "Mortgage Closing Check Requisition" form showing that plaintiffs authorized payments of sixty-two thousand five hundred dollars ($62,500.00) and fifty-one

thousand dollars ($51,000.00) to Coldwell from their mortgage loan proceeds. Pl. Coldwell Resp. at 28-29. Plaintiffs also submitted a Settlement Statement from the U.S. Department of Housing and Urban Development, which itemizes the settlement payments due from plaintiffs at closing. Pl. Coldwell Resp. at 31-33. Plaintiffs misunderstand the significance of these documents, as they merely demonstrate that a portion of the money paid by plaintiffs to the sellers (from the plaintiffs' mortgage loan proceeds) went directly at closing to Coldwell in satisfaction of the sellers' debts to Coldwell for its role as the sellers' agent in the Lido Beach transaction and in the sellers' purchase of the Brennan Place residence. See Reply Affidavit of Scott E. Kossove in Support of Coldwell Motion to Dismiss, Ex. D [Docket Entry No. 25-8]. Therefore, these documents do not support the allegation that Coldwell was acting as plaintiffs' agent (or that any other "special relationship" existed between them), or that Coldwell received compensation from plaintiffs and was thereby enriched at plaintiffs' expense, see Everette Weaver v. Indymac Fed. Bank, FSB, No. 09-CV 5091, 2010 WL 7634134, at *7 (S.D.N.Y. Sept. 29, 2011) (recommending dismissal of unjust enrichment claim against a broker where the broker "received their brokerage commission from the seller . . . pursuant to a separate agreement between the seller and the broker"), adopted by Weaver, 2011 WL 4526404, at *3.

Each plaintiff has submitted an affidavit stating their reasons for believing that Coldwell was their agent in the Lido Beach residence transaction. Pl. Coldwell Resp. at 18-26. However, plaintiffs' statements do not support the conclusion that Coldwell was acting as their agent. Plaintiffs state that: (1) Tripodi was "instrumental in showing [plaintiffs] the Lido Beach property and structuring the deal" and "played an integral role in facilitating an agreement between the [sellers] and [plaintiffs] to purchase the adjacent lot" to the Lido Beach residence; (2) "[t]he key meeting [plaintiffs] had as [they] were negotiating the price and terms of the

18

purchase the house [sic] and pool property took place with Tripodi and the sellers . . . in Coldwell's Long Beach office;" and (3) "[a]ny and all issues that arose that could potentially jeopardize the sale and purchase of the Lido Beach Property was addressed and resolved by Tripodi," including when "Tripodi assured [plaintiffs] that he can get an appraiser to perform an appraisal showing the Lido Beach property was worth $1,600,000.00." None of this alleged conduct is inconsistent with Tripodi having acted exclusively as the sellers' agent, and therefore these allegations do not cure the deficiencies in plaintiffs' claims identified above. Accordingly, plaintiffs' claims against Coldwell are dismissed.

C. Leave to Replead

Dismissal based on failure to plead fraud with particularity under Rule 9(b) is generally without prejudice to allow an opportunity to correct the deficiencies in the complaint, but "leave to amend may be denied when such amendment would be futile." Korova, 2013 WL 417406, at *21. Although it appears unlikely that an amended complaint will cure the apparent lack of factual basis for plaintiffs' claims, the Court cannot conclude at this time that amendment would be futile. However, plaintiffs are cautioned against filing an amended complaint that fails to address the deficiencies identified in this Order, as doing so may warrant the imposition of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. See, e.g., Johnson v. Levy, No. 10-CV-3217, 2012 WL 3580236, at *8 (E.D.N.Y. Aug. 17, 2012) ("[T]he Plaintiffs are cautioned against perfunctory, insubstantial or cosmetic changes, the inclusion of which may subject them and/or their counsel to sanctions under Rule 11.") (internal quotation marks

omitted). **Therefore, if they so choose, plaintiffs may file an amended complaint by March 22, 2013 at 5:00 p.m.**[10]

III.  Conclusion

For the foregoing reasons, the motions of BOA, [Docket Entry No. 31], VK, [Docket Entry No. 34], and Coldwell, [Docket Entry No. 25], are granted in their entirety, and plaintiffs' complaint is dismissed.

**SO ORDERED.**

s/ Sandra J. Feuerstein
_____
Sandra J. Feuerstein
United States District Judge

Dated: March 6, 2013
       Central Islip, New York

---

[10]  As explained above, leave to amend is denied with respect to the RICO claims against BOA.